Burke, J.
Both parties appeal from an order of the Appellate Division, First Department, which modified on the law and the facts a judgment of Supreme Court, New York County, entered in favor of the plaintiff after a non jury trial, by reducing the amount awarded to the plaintiff.
Plaintiff in this action is seeking to have the defendant account fur certain moneys received in the sale and distribution of shares of stock in Spear & Company, a New Jersey corporation doing *578 business in New York. Before considering this claim, however, it is first essential that the full dealings of the parties in this corporation be properly established. On March 19, 1952, the plaintiff Kaminsky, the defendant Kahn, a Martin Cowen and a Sidney Golding originally purchased 134,682 shares of Spear common and 9,354-8/15ths of Spear preferred. The following amounts were advanced and each received the specified interest in this joint venture :
Kahn .......... .......$250,000... ... 50%
Kaminsky...... ....... 350,000... ...16%%
Cowen ......... ....... 125,000. .. ...16%%
Golding ........ ....... 500,000... ...16%%
The total shares were pledged as collateral security with the Public National Bank and Trust Company for a loan of $700,000 which was used to make up the balance of the purchase price of these shares. On the same date Kahn and Kaminsky jointly and severally agreed to indemnify Golding for $375,000 of his $500,000 advance. On August 2, 1957, Kahn and Kaminsky further acknowledged that Golding had acted only as the agent for one Southern Bedding Accessories, Inc., and that the said $375,000 was due to Southern, to whom they similarly acknowledged joint and several liability. Kahn also paid Southern $100,000 on this liability. Apparently Golding, upon receipt of the guarantee in March, 1952, transferred his 16%% interest to Kahn and Kaminsky.
On December 27, 1952, Cowen transferred his interest in the stock to Kaminsky. Thereafter, on November 30, 1953, Kahn transferred his 50% interest in the shares to Kaminsky whereby Kaminsky agreed to indemnify Kahn against certain obligations specified in the agreement including the $375,000 originally owed Southern as evidenced by the agreement with Golding and later with Southern. At this point, Kaminsky was the sole owner of all rig’ht, title and interest in the shares purchased by the group and the joint venture terminated.
Subsequently, Southern Bedding entered a judgment against both Kahn and Kaminsky for $382,325.50 based upon the August 2, 1957 agreement. Kahn likewise received a judgment against Kaminsky for the entire $382,325.50, since Kaminsky had agreed to indemnify Kahn as part consideration for the interest which Kahn had transferred to him.
*579 At this point, Kaminsky was unable either to pay Southern or to indemnify Kahn. Kahn, upon evaluating his position, contemplated purchasing Spear stock at the sale advertized by Southern Bedding, in an attempt to gain control of the corporation. With control, he felt he might be able to redeem at least some of his loss. At Kaminsky’s request, Kahn instead purchased the controlling shares from him. While the particular source of the stock was immaterial to Kahn, this transaction was of significance to Kaminsky since it relieved him of his obligations to both Southern and Kahn. An agreement was entered into on October 28, 1957, concluding this transaction. It was agreed that Kahn would:
(1) Satisfy the Southern judgment by a payment of $382,325.50 plus $34 in costs and disbursements;
(2) Satisfy the judgment against Kaminsky without cash payment;
(3) Release Kaminsky of all other claims or obligations if any resulting from Kaminsky’s indemnification of Kahn (the partial consideration for Kahn’s transferral of his 50% interest to Kaminsky.)
In return, Kaminsky agreed to “ constitute Kahn or his designee the sole and absolute owner (free of any restraint or restriction whatsoever except as provided in [the] agreement) of said 13,382-8/15ths shares of Second Preferred stock and said 129,682 shares of common stock of Spear & Company subject to the lien of Standard Financial Corporation ”. The Standard lien amounted to $275,000 and represented the negotiated loan originally owing to the Public National Bank in the amount of $700,000. It was further agreed that if Kahn did not satisfy the Standard lien (which he had only taken subject to and had not assumed) then Kaminsky could pay off this amount and Kahn had no right other than to recoup the $382,325.50 paid Southern which was to be a lien against stock with no personal liability on Kaminsky’s part. However, if Kahn satisfied the lien, the agreement was to continue in full force and effect. (Apparently Kahn succeeded in paying off Standard, for Kaminsky does not claim at this date that either Standard foreclosed or that he paid Standard.) Thus, Kahn has paid $657.325.50 for this stock.
*580 The agreement further provided that, in the event Kahn desired to sell any of the shares, Kaminsky was entitled to a 10-day first option to purchase on the same terms as the offer. In the event that the stock was sold to a third party, Kaminsky was to receive one third of the net proceeds, after payment of the sums expended in satisfying Standard and Southern Bedding. Kaminsky was also to receive one third of the dividends declared on these securities while in Kahn’s possession.
A supplementary agreement of the same date gave the defendant the right to merge or consolidate Spear with another company, Acme-Hamilton Manufacturing Corp. This agreement makes clear Kahn’s purpose for entering into the initial transaction — he could obtain two things for Acme from Spear, namely, a listing on the American Stock Exchange and a substantial tax loss which would be produced by the contemplated merger. Defendant’s brother was a principal stockholder of Acme at this time.
At the time of the agreement’s execution, the first preferred stockholders of Spear were in a position to exercise their rights of liquidation of Spear & Company pursuant to the corporate charter (for unpaid dividends). Thus, both parties realized that in order to avoid liquidation, the defendant would have to acquire the first preferred stock from its holders. Subsequently, the defendant requested but did not receive the plaintiff’s help in buying the first preferred. Kahn thereupon purchased the first preferred himself by contract dated February 5, 1958.
In August, 1958, there was a reorganization of Spear whereby the common and preferred shares transferred to Kahn in the initial contract were converted into 793,808 shares of common stock. (These shares will be referred to here, as they were below, as the “ Spear Equity ” shares.) After the conversion, the defendant began to sell these unregistered Spear Equity shares in private sales. Kaminsky, however, commenced an action in May, 1959, seeking inter alla to prevent further sales of the Spear Equity, and the defendant then began to sell his other common shares of Spear. Although over 793,808 shares were sold, only 408,251 of these shares were part of the Spear Equity.
*581 In 1960, we had occasion to review these facts and, at that time, we held that the initial complaint in this action was properly dismissed in that it failed to set forth facts warranting an accounting (8 N Y 2d 831). We also affirmed the Appellate Division’s determination that the dismissal was without prejudice to any subsequent action either at law or in equity as might be appropriate.
Shortly thereafter, plaintiff, still seeking an accounting, amended his complaint. Defendant moved to dismiss this second complaint on the grounds that the complaint was barred by res judicata and that the new complaint still failed to set forth facts sufficient to sustain an accounting. This time, Special Term rejected the attack on the complaint. The Appellate Division affirmed (13 A D 2d 143). A trial was then held without a jury, and the Supreme Court entered a judgment in favor of the plaintiff, on the issue of liability only. This interlocutory judgment directed an accounting, and another appeal was taken (23 A D 2d 231). With respect to the availability of an accounting, the judgment was affirmed (although it was modified in other respects) and the case was remanded to Trial Term for the accounting. Thereupon, a new judgment was entered in favor of the plaintiff. Cross-appeals were then taken to the Appellate Division and, again, plaintiff’s right to an accounting was sustained, although the judgment was modified to the extent that the award was reduced (27 A D 2d 248). It is from this decision that the parties have appealed.
Having examined plaintiff’s amended complaint, we are still of the opinion that an accounting is not warranted by the facts of this case. The Appellate Division in maintaining the amended complaint correctly stated, “ If this new complaint be substantially the same as the complaint in the first action, then, of course, we are bound to dismiss. On the other hand if there be new matter pleaded which gives rise to a good cause in equity we are bound by the previous determination of the Court of Appeals and we should not dismiss.” (13 A D 2d 143, 145.)
The court then proceeded to compare this complaint with its predecessor. The Appellate Division distinguished these pleadings in “ two material respects.” First, it was alleged that the stock involved represented control of the corporation. Second, it was alleged that the defendant, exercising the control *582 he had gained from the stock purchased from the plaintiff, and for the purpose of impairing the plaintiff’s rights under the agreement, caused the corporation to purchase all of the stock of another corporation (Acme) owned by him and that such a purchase impaired the rights of the plaintiff. (13 A D 2d, supra, p. 145.) In the opinion of the Appellate Division majority, these additional allegations warranted the equitable relief of the accounting.
We disagree. The dissenting opinion correctly perceived the ground upon which our initial affirmance was based. Beaching the heart of the matter, it was pointed out that “If no accounting was permissible [in the initial complaint] it must have been because no relationship of trust to support the equitable remedy was set out. Absent such relationship, the nature or number of breaches will not create it. * * * If the facts warrant, plaintiff might sue for several different forms of relief all sounding in equity. In addition to other possible actions he might seek reformation of the contract; he might seek to rescind; he might enjoin future breaches or ask for specific performance. But he could not on allegations of the same relationship ask for relief that it was determined that that relationship would not support ’ \ (13 A D 2d, supra, p. 147.)
The transaction here involved was exclusively a contract of sale between the parties, negotiated when Spear & Company was on the brink of financial disaster. The provision providing that the parties share any profits and split any dividends is to be construed, it seems clear, as relating solely to the final consideration that Kahn woidd pay, not as criteria for establishing a joint venture or a fiduciary relationship. Under such circumstances an accounting is not available.
Concluding that an accounting was improper does not, however, require that we set aside all that has been determined in the numerous proceedings already conducted in this case. As the court below noted: ‘ ‘ The present day trend, under CPLK, is to give total effect to the statutory abolishment of ‘ the distinctions between actions at law and suits in equity, and the forms of such actions and suits’ (CPLK 103, stibd. [a]), and it would be a reproach to the efficiency of our courts if, under the circumstances, the court were to dismiss a complaint and *583 remit the plaintiff to ilin necessity of bringing a new action at law. ” (23 AD 2d 231, 230.) The remedy is to permit plaintiff to pursue the legal relief he appears entitled to, i.e., an action for breach of contract at the same time protecting the defendant’s rights to such procedural expedients as may be necessary. The most important of these rights is that of a jury trial in legal actions. CPLB, 4103 necessitates that the defendant be given an opportunity to demand a trial by jury. While a waiver would be certainly advantageous in finally disposing of this case, expediency alone does not warrant the denial of this fundamental right. Also, should the defendant decide to demand a jury trial, it would appear that the findings below, as modified by this court, will be determinative of the question of damages after the jury passes upon the issue of liability.
Having thus disposed of the issues pertaining to the form of the action, it is now proper to review the findings of law and fact as modified by the Appellate Division. As indicated above, the Appellate Division, in its third consideration of this case, was requested by the defendant to strike out certain findings made in the course of the accounting. The court responded by remanding the matter again, with directions that Trial Term proceed with the accounting, and that additional consideration be given to certain matters. (23 A D 2d, supra, p. 242.) This was done, and again the parties by cross appeals returned to the Appellate Division. (27 A D 2d 248.) In a Per Curiam opinion, the Appellate Division, by a vote of 3 to 2, held that the defendant was obliged, if and when the Spear stock was sold, to first sell that which he had obtained from the plaintiff; that, inasmuch as the defendant did sell Spear stock in an amount greater than that given to him by the plaintiff, it was proper to hold him accountable for sales of Spear stock up to the entire amount received by him from the plaintiff; and that the trial court improperly measured the amount with which the defendant was chargeable as a result of these sales. Cross appeals were taken from this judgment, and it is these cross appeals which are now before us.
Examining these findings in order, it is necessary to deal first Avith the Appellate Division’s determination that, if and Avhen Spear stock was sold, defendant was obliged to sell that stock which he had received from plaintiff. The court declared *584 below (27 A D 2d,’p. 250) that, while the defendant was not a fiduciary, it was nevertheless implicit in the contract that, if and when he sold shares, he must necessarily sell Spear Equity shares. Since he has sold more shares than he received from the plaintiff, he must be held accountable for the sales of the first 793,808 shares sold (id., p. 251).
The contract cannot be interpreted in such a manner. It was clearly provided that “ Kaminsky shall have a one-third (%) interest in and to all dividends received on the Spear Equity and any proceeds from the sale of any part thereof and any other moneys or other property received by reason of the ownership of the Spear Equity after the payment of ’ ’ certain enumerated obligations. It cannot be disputed that the subject of the contract was specific Spear stock, identified in the agreement as the “Spear Equity.” As indicated above, it was also contemplated by the parties at the time of this agreement that further shares of Spear were to be acquired to prevent the first preferred holders from liquidating the corporation. Nevertheless, the contract limited the right of first refusal and the participation in profits to the Spear Equity; it did not dictate that these shares be traded first. It is improper to provide terms for a contract under the guise of interpretation and construction, when these terms fail to give effect to the intent of the parties, as evidenced by their agreement. (See Wilson Sullivan Co. v. International Paper Makers Realty Corp., 307 N. Y. 20, 25.)
The plaintiff has presented various arguments in his brief in an attempt to support the Appellate Division determination that the defendant was required to sell Spear Equity shares first. However, each of these arguments (liability of one who commingles goods; rule of “first in, first out” and the duties of an agent entrusted with the sale of property) is predicated upon the existence of a fiduciary relationship. Since the Appellate Division concedes that there was no such relationship, these theories do not apply. (It is, therefore, unnecessary to consider the defendant’s argument that the defendant was free to dispose of non-Spear Equity stock once the plaintiff commenced his action in May, 1959, seeking inter alla to enjoin further sales of the Spear' Equity.) Since it was erroneous to hold that the defendant was under an obligation to sell *585 Spear Equity shares first, it was also improper to make him account for the first 793,808 shares that he sold. The defendant is liable only to the extent that he disposed of Spear Equity shares without giving plaintiff a right of first refusal.
According to the findings of fact, the defendant has actually disposed of 422,275 shares of Spear Equity. In support of this finding, reference is made to previous findings which are intended to substantiate this figure, one of which is finding 104. However, the substance of finding 104 is that while defendant sold 77,785 shares of non-Spear Equity, registered in the name of Acme Hamilton Manufacturing Corp., he should have sold instead a comparable number of Spear Equity shares. Since this finding is not supported by the record, it must be set aside.
An examination of the record indicates that the defendant has on hand and can account for 385,557 shares of Spear Equity stock. This leaves 408,251 shares unaccounted for. It can be presumed that this is the number of Spear shares that defendant has sold. (The dissenting opinion arrived at a figure of 408,225 shares.) Of these shares, the Appellate Division majority concluded that the plaintiff had been given adequate notice, under the terms of the contract, of the sale of 100,000 shares. (27 A D 2d, supra, p. 251.) Consequently, the defendant has breached his contract with plaintiff only with respect to 308,251 shares.
We are now met with the question of what is the proper measure of damages to be applied in determining the amount of defendant’s breach. Here, I am in full accord with the opinion of the Appellate Division that defendant is accountable for the actual sales price of unregistered shares. It is plaintiffs contention that the shares should have been registered and then sold, and thus the damages should be fair market value of registered shares less registration costs. However, there is nothing in the contract that supports such a theory. In addition, there is no proof that the defendant could have sold those shares, after registration, without precipitating a major decline in the value of the stock. Since the defendant had a greater (%) interest in the profits resulting from the Spear Equity stock, in the absence of proof to the contrary, it is reasonable to assume that he sold the shares for the maximum amount possible.
*586 Defendant also contends that the court improperly disallowed an expense of $26,799.94, expended to finance payment of the judgment of Southern Bedding against the plaintiff. According to the terms of the contract, Kahn was to account for any profits after the payment of:
“ (1) The lien of Standard Financial Corporation or any renewal or substitution thereof and to the payment of any interest thereon.
“ (2) All sums paid by Kahn to Southern under the Southern Agreement, without Kahn charging interest ”.
The contract clearly contemplated that Kahn pay the Southern obligation immediately. It is also apparent that the parties did not intend that Kahn should charge interest on the amount due Southern. To permit Kahn to borrow money from others instead of paying the sum immediately himself, and then to deduct the interest paid to these outside parties would be in contravention of the terms of the contract. Therefore, this sum is not deductible.
Finally, it is necessary to briefly examine the cross appeal of plaintiff Kaminsky. It is alleged that, when Spear and Acme merged, defendant received shares of Spear in excess of the true value of his Acme stock. These shares were transferred to Kahn in exchange for his holdings in Acme. Plaintiff argues that the law is well settled that, where a fiduciary is engaged in self-dealing and there is a conflict between his self-interest and the interest of the beneficiary, he must adopt the course of action that will inure to the benefit of the beneficiary. However, plaintiff has failed to show that the defendant was under any fiduciary obligation to the plaintiff. Consequently, plaintiff has no standing to complain of a violation of the fiduciary relationship that exists between a corporate officer and his corporation. In addition, it was the opinion of the Appellate Division that the defendant’s activity with Acme did in fact “inure to the benefit of the beneficiary”, as the law requires that it must (23 A D 2d, supra, pp. 242-243).
In summation, the judgment of the Supreme Court should be vacated to permit the defendant the opportunity to present the issue of liability in this law action to a jury. In addition, the allowable damages should be reduced to properly reflect the fact that, based on the record, the defendant has breached his *587 contract with plaintiff only with respect to 308,251 shares of Spear Equity.
The order of the Appellate Division should be reversed.
Chief Judge Fuld and Judges Van Voorhis, Scileppi, Bergan and Keating concur; Judge Breitel taking no part.
Order reversed, with costs to defendant-appellant-respondent in all courts, and matter remitted to the Supreme Court, New York County, for further proceedings in accordance with the opinion herein.