■ Joseph Ramirez, Respondent-Appellant, v Albert Goldberg et al., Appellants-Respondents. — In an action, *inter alia,* to declare plaintiff a partner in certain business ventures with defendants and for an accounting, defendants appeal and plaintiff cross-appeals from a judgment of the Supreme Court, Queens County (Giaccio, J.), dated November 16, 1978, which, after a nonjury trial, awarded plaintiff the principal sum of $45,000. Defendants' appeal brings up for review an order of the same court, dated May 4, 1977, which denied defendants' motion to strike the case from the equity calendar, and for a jury trial. By orders dated December 17, 1979 and July 14, 1980, the case was remitted to Trial Term for findings of fact pursuant to CPLR 4213 and the cross appeals have been held in abeyance in the interim *(Ramirez v Goldberg,* 73 AD2d 640, 77 AD2d 589). Trial Term has now complied. Judg-

ment and order reversed, on the law and the facts, motion granted and a new trial granted, before a jury, with costs to abide the event. In light of the determination herein, plaintiff, if he be so advised, is granted leave to replead, sounding in contract, and defendants, if they be so advised, may amend their answer to assert the Statute of Frauds as a defense (General Obligations Law, § 5-701, subd a, par 10). In 1969 plaintiff and defendant Albert Goldberg, president and sole shareholder of International Affiliates Co., Inc., entered into a business arrangement for the international marketing of electronic components, products, and·equipment. Goldberg agreed to pay plaintiff 50% of the profits of the business, and appointed him vice-president of International Affiliates Co., Inc. Plaintiff and Goldberg referred to each other as "partners". However, in a letter dated October 15, 1969, plaintiff noted: "Due to the fact that you are the principal giving the initial capital to start, as I already told you, in view to show my good faith, I agree voluntarly [sic] that you alone sign temporarily the checks for all our transactions and you take charge of the shipping of the goods, by issuing the invoices and collecting the proceeds from the customers. Then when the volume of sales shows that we are making enough money, we will form a new company with both partners signing all checks related to the business. Meanwhile each partner will have the right to draw a certain amount of money weekly or monthly for living." Goldberg and his corporation, International Affiliates Co., Inc., obtained the financing and provided all the capital for the business. When conducting business, plaintiff referred to himself as "Vice President" of International Affiliates Co., Inc., and did not hold himself out as a partner. According to plaintiff, the parties agreed to conduct the business under the name of International Affiliates Co., Inc., but agreed to form a new company, jointly owned by plaintiff and Goldberg, once the business made sufficient profits to capitalize a new company. In 1972 plaintiff asked Goldberg to form a new company named "National-Tronics", for the purpose of alerting overseas customers of the name "in advance". Plaintiff claims that Goldberg promised to make him "vice-president and partner" of National-Tronics. Goldberg did file a "Business Certificate for Partners" for National-Tronics Co., but made only himself and his corporation, International Affiliates Co., Inc., partners in that enterprise. Thus, Goldberg was still the only individual authorized to sign checks. Goldberg claims that he only agreed to give plaintiff a proprietary interest in the business when he put up capital, either from his share of the profits or from other sources. At the trial, Goldberg's attorney, Joseph Stocknoff, testified that National-Tronics was formed merely to protect the name so Goldberg and plaintiff could use it once plaintiff was able to capitalize a new company. In September, 1973 plaintiff asked Goldberg to form a new corporation, jointly owned by the two of them, to enable plaintiff to sign checks. Plaintiff suggested the name "Gorez Corporation". A certificate of incorporation for Gorez Corporation was filed, but plaintiff was never issued any shares because he never put up any capital. In 1975 Goldberg terminated his business association with plaintiff, because he was under the impression that plaintiff had withdrawn more than his share of the profits. Thereafter, plaintiff commenced this action for, *inter alia,* an accounting of the profits of the operation. Plaintiff contended that he was partner and/or joint venturer and entitled to 25% of the profits of a second enterprise, Inter-Tronics Co., operated by plaintiff's son-in-law, Sidney Sussman, and Goldberg. Plaintiff claims that Goldberg promised him 25% of the profits of that business, as a finder's fee, for introducing Sussman to Goldberg. In their answer defendants admitted that there was a contractual relationship between plaintiff and Goldberg "whereby the plaintiff was to be employed by National-Tronics Co., and was to receive a salary of 50% of the net profits", but denied that a partnership or joint venture ever existed. Claiming that this was

an action at law, defendants moved to strike the case from the equity calendar and for a jury trial, but that motion was denied by an order dated May 4, 1977. After a trial without a jury, the trial court found that plaintiff's relationships with International Affiliates Co., Inc., National-Tronics Co., and Inter-Tronics Co. constituted joint ventures, and concluded that plaintiff was entitled to equitable relief. We disagree. Plaintiff had the burden of proving the existence of partnership or joint venture (see *Moscatelli v Nordstrom,* 40 AD2d 903; *Chase & Co. v White, Weld & Co.,* 311 F Supp 1253). When determining whether a joint venture exists, the factors to be considered are the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge (see *Yonofsky v Wernick,* 362 F Supp 1005, 1030-1035). An individual who offers services for a share of the net profits from several transactions, risks losing the value of those services, and therefore is subject to losses (see *Marston v Gould,* 69 NY 220, 224-225; *Kraemer v World Wide Trading Co.,* 195 App Div 305). However, the fact that an individual is to receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered (see *Moscatelli v Nordstrom, supra).* Here, plaintiff received a share of the profits for his services. However, the fact that he had no capital invested and never held himself out as a partner or participant in a joint venture is significant (see *Cassidy v Hall,* 97 NY 159). In his letter dated October 15, 1969, plaintiff acknowledged that Goldberg was "the principal giving the initial capital to start", with sole authority to sign checks, and with control over issuing invoices and collecting proceeds from customers. Further, since the enterprise was conducted in the corporate name, plaintiff was not personally liable for any of the obligations of the enterprise (cf. *Weisman v Awnair Corp. of Amer.,* 3 NY2d 444). On these facts, plaintiff cannot be considered a joint venturer and/or partner with Goldberg, International Affiliates, Inc., or National-Tronics Co. It is our view of the evidence that the parties agreed that plaintiff would receive a proprietary interest in the enterprise only when he was able to help capitalize a new company (see *Cassidy v Hall, supra).* Furthermore, plaintiff's relationship with Inter-Tronics Co. cannot be considered a joint venture. The fact that plaintiff was to receive a share of the profits as a finder's fee did not make him a partner or joint venturer in the business (see *Chase & Co. v White, Weld & Co., supra).* We thus conclude that plaintiff failed to establish the existence of a joint venture or partnership, and that he was not entitled to an accounting. Nevertheless, the fact that he demanded equitable relief, e.g., an accounting, is not fatal to his complaint (see *Kaminsky v Kahn,* 20 NY2d 573; *Lane v Mercury Record Corp.,* 21 AD2d 602, affd 18 NY2d 889). Defendants have admitted to the existence of a contractual relationship between the parties and, at trial, plaintiff did prove that defendants agreed to pay him 50% of the profits from the international marketing of electronic components, products and equipment. At the conclusion of the trial, the pleadings were amended to conform to the proof. Therefore, the issue before the trial court and this court is whether any money was due and owing pursuant to contract. However, since the nature of such relief is legal and not equitable, and defendants asserted their right to a jury trial throughout these proceedings and on appeal, they must be accorded a jury trial on that question (see *Kaminsky v Kahn, supra;* CPLR 4103). Plaintiff should be permitted to amend the complaint to properly plead contract. We further note that in light of plaintiff's failure to establish the existence of a partnership or joint venture, defendants may have a viable defense, pursuant to section 5-701 (subd a, par 10) of the General Obligations Law, to plaintiff's claim that he was promised a finder's fee (see *Haskins v Loeb*

*Rhoades & Co.*, 52 NY2d 523). Therefore, defendants, if so advised, should be permitted to amend their answer to assert that defense. For these reasons, we must remit to the Trial Term for a new trial. Mollen, P. J., Hopkins, Lazer and O'Connor, JJ., concur.