885 F.2d 864
 28 Fed. R. Evid. Serv. 1408
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CLINT HURT & ASSOCIATES, INC., Plaintiff-Appellant,
v.
Richard A. BIANCO, Defendant-Appellee.
 No. 88-2909.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1989.
Decided Sept. 13, 1989.
 
 Rudolph L. Di Trapano, Joshua I. Barrett, Di Trapano & Jackson, for Appellant.
 Thomas Edward Scarr, Bowles, McDavid, Graff & Love, Irene Sheila Cannon-Geary, Charles Alan Gilman, Cahill, Gordon & Reindel, for appellee.
 Before WIDENER, Circuit Judge, THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation, and JOHN A. MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant appeals an adverse verdict in a diversity breach of contract action. Two grounds for reversal are presented: (1) defendant's cross examination of a key witness, James Scibelli, as to certain default judgments was irrelevant, immaterial and prejudicial; and (2) the jury instructions defining joint venture misstated applicable New York law. Because both grounds are meritless, we affirm.
 
 
 2
 * This dispute grows out of contracts to drill for oil in West Virginia. James Scibelli is the central figure. He is President and sole shareholder of Tiara, Inc., an independent oil company engaged in the business of oil exploration. Appellee, an investment banker, signed two contracts with Tiara which were in issue at trial: the October 11, 1984 agreement and the December 26, 1984 agreement. The October 11 agreement provided that appellee would fund the drilling of five Devonian oil wells[1] in West Virginia. Tiara was to operate the wells and receive a contractor's fee. Appellee's total liability for funding the drilling of these wells was explicitly capped at $225,000. In return for this investment, appellee purchased a 90% working interest in the Devonian wells. Four of the wells were completed. In lieu of completing the fifth Devonian well, appellee and Tiara entered into the December 26 agreement. This second agreement provided for the drilling of two Newburg formation wells[2] under the same terms and conditions as the October 11 agreement. In return for funding the Newburg formation wells, appellee received a partnership interest in an agreement between Tiara and Bow Valley Petroleum, Inc. under which Tiara had the right to drill oil wells on lands controlled by Bow Valley.
 
 
 3
 The first of the wells to be drilled pursuant to the December 26 agreement was the Welch well in Wirt County, West Virginia. Appellee paid Tiara $200,000 to cover the costs of drilling the Welch well. The well was never completed, nor was the $200,000 used for its drilling. Instead, Tiara used the money for unauthorized purposes. Tiara also defrauded appellee with respect to other investments. Appellee subsequently sued Tiara in the United States District Court for the Southern District of New York. Based on stipulated admissions by Scibelli that Tiara had defrauded appellee and that its counterclaims were meritless, appellee was awarded a judgment of $587,849.08. This judgment forced Tiara to file for bankruptcy. Prior to the bankruptcy, Tiara had contracted with appellant, a Texas corporation specializing in drilling oil and gas wells, to drill the Welch well. Tiara breached its contract with appellant and appellant sued Tiara for $268,274.67. Appellant obtained a default judgment against Tiara. Tiara thereafter filed for bankruptcy. Appellant subsequently sued appellee.
 
 
 4
 Of the complaint's four counts, only the first is in issue here.[3] It alleged that appellee and Tiara were partners or joint venturers and, therefore, appellee was liable for the monies Tiara owed appellant. Thus, the central issue at trial was the nature and extent of Tiara and appellee's business relationship. Scibelli testified at trial that Tiara and appellee were partners. During cross examination, Scibelli was asked a series of questions, objected to by appellant, concerning (1) the New York law suit; (2) how monies were spent on the Devonian oil wells; and (3) default judgments entered against Tiara on debts incurred in connection with the Welch well. Appellee testified that his relationship with Tiara was neither a joint venture nor a partnership. The jury found for appellee. This appeal followed.
 
 II
 
 5
 The district court permitted cross examination of Scibelli on (1) the New York judgment, (2) the prior dealings between appellee and Tiara and (3) the default judgments entered against Tiara on the Welch well. Appellant argues that cross examination on these subjects was unfairly prejudicial. Rule 403, Fed.R.Evid. Review of the record demonstrates the contrary. Far from being unfairly prejudicial, evidence elicited from Scibelli on these subjects is relevant to the merits and to his bias and credibility. Given this, it is plain that the district court did not abuse its discretion by allowing this cross examination. See United States v. Gravely, 840 F.2d 1156, 1162-63 (4th Cir.1988) (abuse of discretion standard applied to evidentiary rulings); Taylor v. Weinberger, 528 F.2d 1153, 1156 (4th Cir.1975) (same).
 
 
 6
 More specifically, Scibelli's honesty and credibility was directly impeached by Tiara's admissions in the New York law suit that it fraudulently obtained money from appellee. Further, the fact that the New York law suit was the primary cause of Tiara's bankruptcy plainly warranted an inference that Scibelli was biased against appellee. Thus, cross examination of Scibelli on the New York action was plainly proper. See United States v. Abel, 469 U.S. 45, 54-55 (1984) (trial court must allow cross examination of a witness to demonstrate bias); United States v. Greenwood, 796 F.2d 49, 54 (4th Cir.1986) (bias is a central issue in determining a witness's credibility); United States v. Ray, 731 F.2d 1361, 1364 (9th Cir.1984) (Rule 608(b), Fed.R.Evid., "does not bar introduction of evidence to show that the witness is biased"). Equally plain is the propriety of the cross examination of Scibelli on the prior dealings between Tiara and appellee. Indeed, appellant's counsel himself considered evidence of the prior dealings between appellee and Tiara relevant to this dispute, stating that "the progression of activity on the part of [appellant with Tiara] is a critical part of our case." Joint Appendix at 367. Given the importance of these prior dealings, appellee's cross examination on this subject was entirely appropriate. And this is so notwithstanding that this testimony tended to reflect unfavorably on Scibelli. It showed that Scibelli mismanaged Tiara and misappropriated funds. As such, the testimony was plainly admissible. See United States v. Calle, 822 F.2d 1016, 1021 (11th Cir.1987) ("evidence relevant to a particular issue is not rendered inadmissible because it happens to include references to specific bad acts of a witness.").
 
 
 7
 Nor did the district court abuse its discretion by admitting into evidence the default judgments entered against Tiara on the Welch well. Introduction of the default judgments was probative as to a number of issues. First, they served to impeach Scibelli's credibility by indicating that Tiara misapplied the monies given it by appellee and thereby served to undermine Scibelli's credibility. See United States v. Leake, 642 F.2d 715, 718-19 (4th Cir.1981) (reversible error for district court to exclude evidence of misuse of funds for impeachment purposes); see also Roshan v. Fard, 705 F.2d 102 (4th Cir.1983). These judgments also invite the inference that Scibelli may be biased against appellee. If the jury found appellee to be Tiara's partner, appellee would be liable for half of the total amount of the default judgments entered against Tiara on the Welch well. Such a sizable reduction in Tiara's total indebtedness would certainly accrue to the benefit of Scibelli, who, as Tiara's President and sole shareholder, might well be found to be personally liable for Tiara's debts. See United States v. Greenwood, 796 at 54 ("Bias ... is not a collateral issue."). Moreover, the default judgments demonstrated that Tiara held itself out as the sole owner and operator of the Welch well--an important factor in determining whether a joint venture existed. See Ramiriz v. Goldberg, 82 A.2d 850, 439 N.Y.S.2d 959, 961 (N.Y.App.Div.2d Dept.1981) (holding oneself out as partner significant evidence that partnership exists). For all these reasons, testimony concerning the default judgments was properly admitted.
 
 III
 
 8
 Relying on Glantz Contracting Corp. v. 1955 Associates, 20 A.D.2d 535, 245 N.Y.S.2d 129 (N.Y.App.Div. 1st Dept.1963) (per curiam), aff'd, 14 N.Y.2d 931, 200 N.E.2d 867, 252 N.Y.S.2d 328 (1964), appellant contends that the following jury instruction misstated New York law:[4]
 
 
 9
 The defendant contends that there was a cap or a limitation on the amount of money which needed to be required to pay toward the drilling of the Welch well and other wells under the five-well agreement of October 11, 1984. In considering whether or not a joint venture existed, a limitation, if any is found by you to exist, upon the monetary contribution of Mr. Bianco and the agreements between the plaintiff--or under the agreements with Tiara, I should say, is but one factor for the jury to consider in determining whether a joint venture existed.
 
 
 10
 Joint Appendix at 796. Appellant is mistaken. The jury instruction properly stated New York law. See Tenney v. Insurance Co. of America, 409 F.Supp. 746, 749 (S.D.N.Y.1975); M.I.F. Securities Co. v. Stamm & Co., 94 A.2d 211, 463 N.Y.S.2d 771 (N.Y.App.Div. 1st Dept.), aff'd, 60 N.Y.2d 936, 471 N.Y.S.2d 84 (1983); Ramiriz v. Goldberg, 82 A.D.2d 850, 439 N.Y.S.2d 959 (N.Y.App.Div.2d Dept.1981); Steinbeck v. Gerosa, 4 N.Y.2d 302, 175 N.Y.S.2d 1, 13 (1958). As the Tenney court put it,
 
 
 11
 [i]n New York, as in most other states, there are several significant indicia of the existence of a partnership relationship among various owners of interests in a business venture ... [including] the pro-rata sharing of profits and losses of the enterprise.
 
 
 12
 Tenney, 409 F.Supp. at 749.
 
 
 13
 Glantz does not stand for a contrary proposition. The Glantz court did find that a limitation on expenditures did not make a joint venture "any less joint." Glantz, 245 N.Y.S.2d at 131. But in Glantz, the agreement at issue demonstrated, by its terms, that the parties were joint venturers and no evidence was presented by the defendant to "suggest the contrary." Glantz, 245 N.Y.S.2d at 130-31. Thus, the Glantz court was not faced with the problem presented here, namely the task of determining whether ambiguous contracts containing liability limitations, such as the October 11 and December 26 agreements, create a joint venture or partnership. We are confident that the Glantz court, had it been faced with the instant facts, would have found that the challenged jury instructions accurately and fairly stated New York law.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 A Devonian well is an oil well drilled to the depths of formations created in the Devonian period of geological time, i.e., the fourth period of the Paleozoic Era, a period that began about three hundred thirty million years ago and lasted fifty million years
 
 
 [2]
 A Newburg formation well is a well drilled into the Newburg formation, a geological rock formation which in Wirt County, West Virginia, lies approximately 7,500 feet below the surface
 
 
 [3]
 Count II alleged that Tiara served as appellee's agent in drilling the Welch well and that appellee, therefore, was liable for the debts incurred by Tiara in drilling the well. Count III alleged that appellee tortiously interfered with Tiara's contractual relationship with appellant. Count IV was a claim for punitive damages. Appellant voluntarily dismissed Counts III and IV. Count II was dismissed by the Court on appellee's motion for a directed verdict. No appeal was taken from this dismissal
 
 
 [4]
 The parties agree that the October 11 and December 26 agreements are governed by New York law