■ MARVIN PRINCE, Appellant-Respondent, v DARRIN O'BRIEN, Respondent-Appellant, et al., Defendants. [683 NYS2d 504] —Order, Supreme Court, New York County (Ira Gammerman, J.), entered June 12, 1997, which, insofar as cross-appealed from by defendant, granted plaintiff leave to amend his complaint on the eve of trial to assert a quantum meruit claim, unanimously reversed, on the law, without costs, and the plaintiff's motion denied. Order, same court and Justice, entered November 24, 1997, denying defendant's motion for

judgment notwithstanding the verdict on liability, but setting aside the jury verdict as excessive and ordering a new trial on damages, unanimously reversed, on the law, without costs, the defendant's motion granted, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-respondent-appellant dismissing the complaint as against him. Plaintiff's appeal from trial ruling, same court and Justice, made on the record on June 12, 1997, dismissing, after the close of the evidence, plaintiff's claim for breach of an alleged partnership agreement, unanimously dismissed, without costs, as not taken from an appealable paper.

Plaintiff Marvin Prince and defendant Darrin O'Brien became friends in 1988 when they were both living in Toronto. Plaintiff, a Jamaican native, helped defendant refine his reggae singing ability and knowledge of Jamaican dialect. At plaintiff's instigation, the two began conducting practice sessions in plaintiff's basement for several hours a day, with defendant singing and plaintiff performing accompaniment by "scratching" (manipulating records on a turntable). Plaintiff allegedly coined defendant's stage name, "Snow".

In August 1991, when plaintiff was visiting New York, he fortuitously encountered a rap musician and music producer known as M.C. Shan. Plaintiff told Shan about defendant and Shan said he was interested in hearing defendant sing. Defendant then came to New York and auditioned for Shan, who was favorably impressed.

M.C. Shan introduced defendant to record producers Steve Salem and David Eng.* Plaintiff alleges that in January 1992, Salem and Eng showed him a draft of a multi-album production and recording agreement with both plaintiff's and defendant's names on it, but that plaintiff was unable to understand it and never saw the agreement again after defendant sent a copy to his mother to get legal advice from her friend. Subsequently, without involving plaintiff any further, defendant entered into a production agreement with Shan and a management agreement and a recording and production agreement with Salem and Eng. The latter obtained a recording contract for defendant with a major label.

The parties give different accounts of the extent of plaintiff's contribution to defendant's debut album, "12 Inches of Snow", recorded between 1991 and 1992. Plaintiff testified that he co-wrote five of the 14 songs, performed on three, selected songs

---

* Salem and Eng were also named as defendants but the claims against them were dismissed and are not the subject of this appeal.

for inclusion, and produced the song "Runway". Defendant testified that plaintiff neither produced nor selected any of the songs and that the only song he co-wrote was "Runway". Shan, who produced the album, corroborated defendant's testimony.

From January to August 1993, plaintiff participated in the promotional tour for the album and performed as the DJ for the on-stage performances. Significantly, plaintiff was listed as an employee of defendant's corporation and received a salary and per diem payments from it for his work on the tour. Plaintiff also earned $84,000 in royalties from co-writing "Runway". He left the tour when he discovered that defendant was receiving more money from management than he was. Plaintiff allegedly believed that defendant had agreed to be his partner and to share the profits equally.

Plaintiff commenced the instant action in December 1994. The original complaint asserted causes of action for breach of an alleged oral partnership agreement and breach of fiduciary duty. The complaint was dismissed in May 1996 on defendant's motion for summary judgment, but reinstated by this Court in December 1996 (*Prince v O'Brien*, 234 AD2d 12). Plaintiff did not move to amend his complaint to add the quantum meruit cause of action until June 5, 1997, which was the Thursday before the Monday on which the trial was scheduled to begin. Discovery had already been completed, and jury selection was about to begin on the very day that plaintiff brought his motion. The trial court granted the motion in the erroneous belief, as discussed *infra*, that defendant would not be prejudiced thereby.

Plaintiff's evidence that he and defendant had formed a legal partnership was limited to his account of two brief conversations between the parties. In 1990, when the two men began working together on songs in plaintiff's basement, he allegedly suggested to defendant, "If something comes out of this, let's be partners," and defendant agreed. Plaintiff admitted that these discussions were not concrete; the parties never organized a formal business plan, nor was plaintiff in New York to advance defendant's career. The second conversation allegedly took place in August 1991, when defendant was auditioning for Shan. Plaintiff claims that he told defendant to "remember our deal about going partners" and that if defendant was successful, plaintiff would be his DJ and they would split the earnings "fifty-fifty all the way". Later, defendant referred to plaintiff as his "partner" in a promotional video, but now claims it was only in the slang sense. Shan, Salem and Eng testified that they were unaware of the existence of any partnership agree-

ment. At the close of the evidence, therefore, the trial court dismissed the causes of action based on the partnership theory.

In support of his quantum meruit claim, plaintiff presented some information as to defendant's earnings from his album. However, plaintiff did not specifically show how much was attributable to his own efforts, nor how his services were worth more than the salary and royalties he had already received. The jury nevertheless awarded him $1.5 million, three times the amount he had requested. Noting the lack of evidence that plaintiff had contributed so much uncompensated value to defendant's recording career, the trial court ordered a new trial on damages after plaintiff refused to accept a reduced award.

We find that the trial court erred in granting plaintiff's belated motion to amend the complaint. Although CPLR 3025 (b) provides that leave to amend should be freely given, this does not mean that the court must permit a substantial amendment of the pleadings "in the absence of any semblance of an excuse for the delay involved" (*Gross & Co. v Damor Realty Corp.*, 60 AD2d 541). This is particularly true where the opposing party, having prepared his case in response to the original pleadings, would suffer prejudice by the late addition of a new theory of recovery (*F.G.L. Knitting Mills v 1087 Flushing Prop.*, 191 AD2d 533, 534). In *F.G.L. Knitting Mills*, the Court denied appellant's motion to add a new affirmative defense two days before jury selection was to begin; the court found no reasonable excuse for the delay because the facts on which the new defense was based had been known to the defendant from the outset (*supra*, at 534).

The instant case presents a very similar scenario. Plaintiff's newly asserted quantum meruit claim and his original complaint were based on the same facts concerning his alleged contribution to defendant's success in the music industry. He offered no reason why he could not have sought quantum meruit recovery from the beginning rather than on the eve of trial, after discovery was completed (*Haussmann v Wolf*, 187 AD2d 371, 372 [finding "obvious prejudice" to defendants from plaintiff's addition of new theory of recovery on the eve of trial]). The trial court failed to consider the many ways in which defendant would be prejudiced by the addition of this claim. First, all the depositions had already been taken, but the witnesses (including the parties) had only been asked questions about the existence of a partnership, not about the value of plaintiff's services. Defendant himself was unable to come to the United States for trial, so no follow-up questions on this

new topic could be posed to him. Second, when conducting discovery and preparing the defense case, defendant's counsel had not prepared evidence or witnesses to rebut any assertions plaintiff might now make about the extent and monetary value of plaintiff's contribution to the enterprise. Since the measure of damages for breach of the alleged partnership agreement would be defendant's profits, an entirely different standard, defendant naturally prepared evidence only on this point.

Plaintiff has purported to appeal from the court's trial ruling dismissing his breach of partnership claim on the grounds that he had failed to show the existence of a partnership. Though defendant has not raised this objection, under CPLR 5512 (a) no appeal can be taken from this ruling because it was never incorporated into an appealable order, nor has it been subsumed in a final judgment (*Matter of Grosso v Slade*, 179 AD2d 585, 586). The procedural posture of the instant case is very similar to that presented in *Stevens v Naumburg* (214 App Div 94). The defendant therein moved at the close of the evidence to dismiss the complaint. The court reserved decision on this motion till after the jury had rendered their verdict. The court subsequently set aside the verdict as unsupported by the evidence and ordered a new trial, and, in the same order, denied the defendant's motion to dismiss the complaint. We held that the court's ruling on this motion was nonappealable. Rulings made during the course of the trial would only be reviewable upon an appeal from the judgment, but no final judgment had yet been entered because the original verdict had been set aside and the new trial had not taken place (*supra*, at 97).

Were we to reach the merits of the court's dismissal of plaintiff's breach of partnership claim, we would find that the trial court acted properly. We originally reversed the lower court's initial grant of summary judgment to defendant (*Prince v O'Brien, supra*) because plaintiff adduced circumstantial evidence of an oral partnership agreement. However, at trial, the evidence of any traditional indicia of partnership was clearly insufficient.

The trial court properly observed that the parties had not exercised joint control over the entertainment enterprise on which they collaborated (*Brodsky v Stadlen*, 138 AD2d 662, 663). Before defendant became a success, the parties may have casually discussed splitting their hypothetical profits equally, but there was no evidence that they agreed to share losses, which is an "essential element" of a partnership (*Chanler v Roberts*, 200 AD2d 489, 491, *lv dismissed in part and denied in part*, 84 NY2d 903). Plaintiff, himself, testified that the money

he occasionally advanced to defendant was a friendly gift rather than a capital contribution to their alleged joint venture (*Kyle v Ford*, 184 AD2d 1036, 1037 [lack of capital contribution suggests no partnership existed]). Finally, when he toured with defendant, plaintiff was designated and compensated as an employee of defendant's corporation. Since plaintiff, therefore, has no viable claims, defendant is entitled to a judgment in his favor dismissing the complaint. Concur—Sullivan, J. P., Rosenberger, Wallach and Mazzarelli, JJ.