■ Peter Hammond, Appellant, v Bruce W. Smith, Respondent. [57 NYS3d 832]—

Appeal from an order of the Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered May 27, 2016. The order granted defendant's motion for summary judgment dismissing the complaint.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking, inter alia, damages for breach of an alleged oral partnership between the parties to develop and market a new lithographic tool. Plaintiff appeals from an order that granted defendant's motion for summary judgment dismissing the complaint on the ground that no partnership existed between the parties. We affirm.

We conclude that defendant met his initial burden of establishing that no partnership existed (see Fasolo v Scarafile, 120 AD3d 929, 930 [2014], lv dismissed 24 NY3d 992 [2014]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A partnership is an association of two or more persons to carry on as co-owners a business for profit" (Partnership Law § 10 [1]). Where, as here, there is no written partnership agreement between the parties, a court looks to the parties' conduct, intent, and relationship to determine whether a partnership existed in fact (see Fasolo, 120 AD3d at 929-930). The relevant factors are (1) the parties' intent, whether express or implied; (2) whether there was joint control and management of the business; (3) whether the parties shared both profits and losses; and (4) whether the parties combined their property, skill, or knowledge (see Griffith Energy, Inc. v Evans, 85 AD3d 1564, 1565 [2011]; Kyle v Ford, 184 AD2d 1036, 1036-1037 [1992]). No single factor is determinative; a court considers the parties' relationship as a whole (see Fasolo, 120 AD3d at 930; Griffith Energy, Inc., 85 AD3d at 1565).

With respect to the first factor, we must consider whether the parties expressly or implicitly intended to become partners (see generally Fasolo, 120 AD3d at 930). Evidence concerning the parties' preliminary negotiations bears directly on their intent (see Boyarsky v Froccaro, 131 AD2d 710, 713 [1987]). In support of his motion, defendant submitted, inter alia, the deposition testimony of plaintiff, the affidavit of defendant, invoices, a lease, and the parties' correspondence documenting their contract negotiations. That evidence establishes that the parties never shared the intent to become partners. In June 2004, defendant wrote an email to plaintiff suggesting that they discuss "how [they] might be able to work together." Plaintiff responded that a partnership "might work" and expressed hope that the parties could come to a "workable agreement." Thereafter, the parties met in person and plaintiff explained that he wanted a 50% share in a partnership. Plaintiff later testified at his deposition that, upon hearing

that proposal, defendant had "a look on his face like maybe he wasn't expecting that," and did not respond.

Although plaintiff testified that he interpreted defendant's silence as an agreement to an equal partnership, the documentary evidence undermines any such assumption. In late September 2004, prior to meeting with defendant's attorney, plaintiff wrote an email to defendant stating: "I think we need to nail down the key terms of our agreement . . . Our attorney[s] and advisors should be able to help us come to a fair and equitable agreement." Defendant responded: "We should also keep open other ways to structure things. We initially discussed that your company might contract to build tools for my company. This could also be an option. Others may also exist." According to plaintiff's deposition testimony, the resulting meeting with defendant's attorney in October 2004 did not further the parties' business negotiations, and plaintiff left that meeting discouraged. Thereafter, plaintiff approached defendant and offered to take a reduced, 20% share in a partnership agreement, ostensibly to be a "good partner," further undermining any suggestion that the parties already had agreed to enter into an equal partnership. When plaintiff later testified about defendant's response to that proposal, plaintiff did not testify that defendant agreed to a partnership under the proposed terms; rather, he testified only that defendant appeared "happy" with plaintiff's change of heart. In May 2005, plaintiff wrote one last email to defendant asking to "finalize [their] business deal," but the parties ended their business relationship in or around August 2005 without having reduced it to writing. Thus, the evidence demonstrates that the parties never shared the intent to enter into a partnership, although they initially had explored the possibility of one.

We respectfully disagree with our dissenting colleague's view that plaintiff's deposition testimony raised triable issues of fact whether a partnership existed. Although plaintiff referred to the parties' business relationship as a partnership and testified that defendant acquiesced in plaintiff's initial proposal, it is well settled that "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to create a material issue of fact (*Zuckerman*, 49 NY2d at 562).

With respect to the second factor, we must consider whether there was joint control and management, e.g., shared supervision of business operations and shared responsibility for handling financial affairs (*see Griffith Energy, Inc.*, 85 AD3d at 1566; *Kyle*, 184 AD2d at 1037). In his affidavit, defendant averred that he hired nine engineers, a technical writer, and a

bookkeeper, contracted with a payroll company and an accounting firm, paid bills, established relationships with vendors, developed management protocols, and directed all assembly and engineering decisions, and plaintiff's deposition testimony raised no issues of fact in that regard. In contrast, plaintiff contributed the services of one engineer whom he employed and paid, and defendant reimbursed plaintiff for that employee's services. Furthermore, plaintiff testified at his deposition that financial transactions were handled through a bank account belonging to defendant's corporation, and that defendant alone had the authority to write checks on that account. Thus, the evidence overwhelmingly demonstrates that defendant had sole control and management of the business.

With respect to the third factor, we must consider whether the parties shared profits and losses (*see Fasolo*, 120 AD3d at 930; *Ramirez v Goldberg*, 82 AD2d 850, 852 [1981]). Although a person's receipt of a share of profits is prima facie evidence that he or she is a partner (*see* Partnership Law § 11 [4]), there is no allegation or evidence that plaintiff received a share of profits.

It is well established that shared losses are an " 'essential element' " of any partnership agreement (*Prince v O'Brien*, 256 AD2d 208, 212 [1998]; *see Fasolo*, 120 AD3d at 930). Where there is "undisputed evidence that [a party] never made a capital contribution to the business[, such evidence] strongly suggests that no partnership existed" (*Kyle*, 184 AD2d at 1037; *see Fasolo*, 120 AD3d at 930). The documentary evidence and plaintiff's own deposition testimony establish that plaintiff made no capital contributions and did not share in the business venture's losses. At his deposition, plaintiff testified that he made no capital contributions to the venture, and contributed only "time, effort, good will, [and] expertise as the investment." Throughout the course of their business relationship, plaintiff sent defendant numerous invoices to recoup tens of thousands of dollars of his expenses, and there is no dispute that defendant reimbursed plaintiff for those expenses. When the parties were seeking office space to lease, plaintiff sent an email to defendant indicating that he did not wish to be liable under the lease, and, indeed, defendant alone signed the resulting lease and accepted all obligations thereunder. Defendant averred that he used his own personal credit, and there is no dispute that defendant alone was liable to creditors.

Plaintiff contends, based on *Ramirez*, that he shared in losses because he offered his own services for a share of net profits and "risk[ed] losing the value of those services" (82 AD2d at

852). We reject that contention. Although plaintiff's testimony supports an inference that he offered services to the venture for which he was never compensated, such services alone do not establish that a person shared in losses sufficient to raise an issue of fact concerning the existence of a partnership where, as here, that person invested no capital and was not liable to creditors (*see id.*).

With respect to the fourth factor, we must consider whether the parties combined their property, skill, and knowledge. Although plaintiff testified to instances in which he contributed his skill and knowledge related to design and marketing in the engineering industry, that factor is not dispositive (*see generally Fasolo*, 120 AD3d at 930). Upon our review of the foregoing factors and the parties' business relationship as a whole (*see generally id.*; *Griffith Energy, Inc.*, 85 AD3d at 1565), we conclude that defendant met his initial burden of establishing that no partnership existed (*see Fasolo*, 120 AD3d at 930). The burden thus shifted to plaintiff to raise an issue of fact by submitting evidence in admissible form (*see generally Zuckerman*, 49 NY2d at 562).

We further conclude that plaintiff failed to raise an issue of fact whether a partnership existed between the parties (*see Fasolo*, 120 AD3d at 931; *see generally Zuckerman*, 49 NY2d at 562). In opposition to the motion, plaintiff submitted, inter alia, the affidavit of plaintiff and documents that included a business proposal and a cover letter in which the word "partnership" is used to refer to the parties' business relationship. As Supreme Court properly reasoned, however, " 'calling an organization a partnership does not make it one' " (*Kyle*, 184 AD2d at 1037; *see UrbanAmerica, L.P. II v Carl Williams Group, L.L.C.*, 95 AD3d 642, 644 [2012]). In light of the documentary evidence detailed above that the parties never shared the intent to become partners, those two references to a partnership in documents prepared by lay persons do not raise an issue of fact whether the parties in fact entered into a legal partnership. Finally, plaintiff's affidavit was insufficient to raise an issue of fact (*see generally Zuckerman*, 49 NY2d at 562).

All concur except Whalen, P.J., who dissents and votes to reverse in accordance with the following memorandum.

Whalen, P.J. (dissenting). I respectfully dissent. In my view, plaintiff's deposition testimony raised triable issues of fact with respect to the existence of a partnership between the parties. Because that testimony was among defendant's own submissions in support of his motion for summary judgment, I

conclude that defendant failed to meet his initial burden on the motion, and that Supreme Court erred in granting it (*see Prince v O'Brien*, 234 AD2d 12, 12 [1996]; *see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Bianchi v Midtown Reporting Serv., Inc.*, 103 AD3d 1261, 1261-1262 [2013]).

At his deposition, plaintiff testified that he and defendant reached an oral agreement to be partners in their business venture at some point prior to an October 2004 meeting with defendant's attorney, and that defendant acquiesced in his request for a 50% share of the partnership (*see generally Don v Singer*, 92 AD3d 576, 577 [2012]). Plaintiff further testified that he thereafter voluntarily reduced his share to 20% in recognition of defendant's greater contributions to the business, and that the two of them later agreed to bring a third person into the partnership, with plaintiff retaining his 20% share and the third person assuming a 10% share. In addition, plaintiff testified that defendant sought to end their business relationship by telling plaintiff that he "didn't want to be partners anymore," which suggests that defendant believed that they had been partners up to that point. Although the court characterized the evidence of an absence of mutual intent to be partners as "overwhelming," and the majority points to evidence that it views as "undermin[ing]" plaintiff's testimony, I conclude that plaintiff's testimony supports a reasonable inference that the parties shared the intent to form a partnership (*see A.G. Interiors Unlimited v DiMaggio*, 224 AD2d 466, 466 [1996]; *Boyarsky v Froccaro*, 131 AD2d 710, 712-713 [1987]; *see generally Don*, 92 AD3d at 577), and that the existence of contrary evidence merely raises an issue of credibility inappropriate for resolution on a motion for summary judgment (*see generally Ferrante v American Lung Assn.*, 90 NY2d 623, 631 [1997]; *Harrington Group, Inc. v B/G Sales Assoc., Inc.*, 41 AD3d 1161, 1162 [2007]; *Alvarez v New York City Hous. Auth.*, 295 AD2d 225, 226 [2002]). Even assuming, arguendo, that the majority is correct that certain factors tending to establish the existence of a partnership are lacking in this case (*see generally Fasolo v Scarafile*, 120 AD3d 929, 929-930 [2014], *lv dismissed* 24 NY3d 992 [2014]), I conclude that those factors are not determinative (*see id.* at 930), and that the competing inferences regarding the intent of the parties should be resolved by the trier of fact (*see Cavezza v Gardner*, 176 AD2d 911, 911-912 [1991]).

In any event, I conclude that defendant submitted conflicting evidence concerning whether the parties shared profits and losses and whether the parties combined their property, skill,

and knowledge (*see Kyle v Ford*, 184 AD2d 1036, 1036-1037 [1992]). With respect to the latter factor, plaintiff testified that his contributions to the business included goodwill, design and engineering expertise, and access to vendors and suppliers. With respect to sharing of profits and losses, although it is undisputed that defendant paid plaintiff for some of his services, plaintiff testified that he contributed a significant amount of unpaid services to the business, and that he did so "as an investment," i.e., in anticipation of a share of future profits. In my view, that testimony is sufficient to establish that plaintiff may have been exposed to a risk of losses (*see Ramirez v Goldberg*, 82 AD2d 850, 852 [1981]; *see generally Don*, 92 AD3d at 577). Contrary to defendant's contention, the absence of other evidence corroborating that plaintiff in fact performed unpaid services affects only the evidentiary weight of plaintiff's testimony and does not warrant disregarding that testimony for purposes of defendant's motion (*see generally Alvarez*, 295 AD2d at 226).

In sum, I agree with plaintiff that the court improperly resolved issues of fact in granting defendant's motion (*see Patel v Patel*, 192 AD2d 357, 357-358 [1993]), and I would therefore reverse the order and deny the motion. Present—Whalen, P.J., Centra, Lindley, Troutman and Scudder, JJ.