(January 14, 2003)

■ ORLANDO HOLLIDAY et al., Respondents-Appellants, v HUDSON ARMORED CAR & COURIER SERVICE, INC., Appellant-Respondent, et al., Defendant. (And a Third-Party Action.) HUDSON ARMORED CAR & COURIER SERVICE, INC., Second Third-Party Plaintiff, v CITY OF NEW YORK DEPARTMENT OF GENERAL SERVICES et al., Second Third-Party Defendants-Respondents. [753 NYS2d 470] —Orders, Supreme Court, New York County (Saralee Evans, J.), entered February 26, 2002 and March 11, 2002, which, to the extent appealed from, denied defendant-appellant's motion for summary judgment and denied plaintiffs-respondents' cross motion for leave to amend the complaint to include a cause of action for wrongful death, unanimously modified, on the law, defendant-appellant's motion for summary judgment granted, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

This is an action by plaintiffs for personal injuries allegedly sustained by plaintiff Orlando Holliday (Holliday), now deceased, as a result of a traffic accident that occurred on April 1, 1986.[1] On that date, Holliday was working as an inspector for the Taxi and Limousine Commission and was in the process of arresting a taxi driver. Defendant-appellant Hudson Armored Car & Courier Service, Inc. (Hudson) is the owner of the armored truck that was involved in the accident with Holliday. Due to Holliday's demise, and the fact that he was never deposed prior to his death in 1994, the only factual account of the accident comes from the driver of the Hudson vehicle, Charles Cerillo (Cerillo), a Hudson employee.

According to Cerillo's deposition testimony, on the date in question he was driving the armored truck westbound on East 42nd Street, in the right lane. As he approached the taxi line outside Grand Central Station, he observed two cars in the parking lane to his right, alongside the curb. Two men were standing on either side of the car parked in front, and there appeared to be an altercation with the driver sitting in the vehicle. At that point, a police officer standing in the street in front of Cerillo's truck motioned for the cars traveling

---

1. Holliday's son and the administrator of his estate, Melvin Holliday, was substituted as plaintiff in February 1999.

westbound to stop, and Cerillo complied. Cerillo's truck was stopped for approximately 5 to 10 minutes, during which the two men standing next to the parked car, and the driver of said car, walked eastbound to a second car parked immediately behind the first one. Cerillo testified that this second car was parked alongside his truck, and he lost sight of the men.

Subsequently, the police officer standing in the street to Cerillo's left motioned for him to proceed forward. Cerillo testified that he moved the truck a short distance forward, never moving out of the right lane. At that point, he was directed by the police officer to stop the truck again. Cerillo's supervisor, seated next to him in the truck, also told him to stop. Cerillo was then ordered to pull the truck over to the curb in front of the parked cars, which he did. A police officer subsequently told Cerillo that the door of the parked car had gotten caught in the wheel well of the truck, and that someone had been pinned between the vehicles.

After the accident, Holliday was treated for his injuries at Bellevue Hospital and released the same day. He continued to receive outpatient treatment for chest, shoulder, back and groin injuries. According to a workers' compensation report dated January 11, 1989, Holliday also complained of psychological injuries resulting from the accident, including depression, nervousness, inability to achieve an erection, flashbacks and fearfulness of crowds, being alone and driving. In September 1986, Holliday began seeing a psychiatrist twice a week and was put on antidepression medication.

At the time of the accident, Holliday had suffered from diabetes for six years. According to Holliday, his diabetes was under control prior to the accident. However, by November 1987, he required a two-week hospitalization because his blood sugar level was 700 mg/dl. He was further diagnosed with hypertension, kidney disease, ruptured lining of the stomach, an ulcerated sole of his right foot and a fungal infection of the esophagus. Between 1988 and 1994, Holliday's diabetic condition continued to deteriorate, resulting in renal failure (January 1989), dialysis treatment and retinopathy surgery (February 1991), and an unsuccessful kidney transplant (1994). On December 21, 1994, Holliday died of acute renal failure.

Meanwhile, on April 3, 1989, plaintiffs commenced the instant action for personal injuries against Hudson. Plaintiffs alleged that Hudson was negligent in the operation of the armored truck and that Holliday suffered both physical and psychological injuries as a result. In 1999, plaintiffs moved to amend the complaint to add a cause of action for wrongful

death. The motion was denied for failure to provide a medical affidavit.

In October 2001, after the completion of discovery, Hudson moved for summary judgment, arguing that the only evidence of how the accident occurred, Cerillo's deposition testimony, exonerated it of liability. Hudson further argued that it was immune from liability because Cerillo advanced the truck upon the order of the police officer, and the only negligence, if any, was that of the officer. In opposition, plaintiff argued that an unauthenticated police accident report and an unsworn statement of Holliday's coworker raised issues of fact precluding summary judgment. Plaintiff additionally claimed entitlement to a lesser standard of proof under the *Noseworthy* doctrine (*see Noseworthy v City of New York*, 298 NY 76), since Holliday was now deceased.

Plaintiffs cross-moved to amend the complaint, in a second attempt to add a wrongful death cause of action. This time, plaintiffs attached an affidavit of a medical doctor who had not examined Holliday, but who had reviewed his medical records, tests and the reports of other doctors who had treated him. Hudson opposed, arguing that the medical doctor's report was incompetent to show that Holliday's death was causally related to the accident, so as to relate back to the original claim. Hudson also argued that in light of the trial-ready posture of the case and plaintiffs' delay, it would be unduly prejudiced by the amendment.

The IAS court denied both Hudson's motion for summary judgment and plaintiffs' cross motion to amend the complaint. With respect to summary judgment, the court held that "there are sufficient facts in dispute about how this accident happened," and a police accident report attached to plaintiffs' opposition papers indicates that "the accident occurred in a particular way, which is not corroborated by [Cerillo]." The court denied plaintiffs' motion to amend on the ground that it would be prejudicial to Hudson to allow amendment of the complaint two weeks prior to the scheduled trial date, adding a new cause of action seeking different damages. The court further cited the unfairness of permitting the amendment where plaintiffs waited until two years after the initial motion was denied before addressing the deficiency, and where Holliday died "so many years ago."

On appeal, Hudson argues that the IAS court erred in denying its motion for summary judgment since the only admissible evidence in the record demonstrates that it was not negligent in causing the accident. Hudson further contends that the evi-

dence submitted by plaintiff in opposition to the motion was both inadmissible and failed to raise an issue of fact requiring a trial. As we agree with both of these contentions, we reverse and grant summary judgment to Hudson.

The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute and that it is entitled to judgment as a matter of law (see *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853; *J.E. v Beth Israel Hosp.*, 295 AD2d 281, 282). Hudson asserts that it met its burden as movant by virtue of Cerillo's uncontradicted testimony establishing a lack of negligence on its part. In substance, Cerillo testified that he stopped his truck on East 42nd Street at the direction of a police officer;[2] that he observed a dispute between three men in the vicinity of a parked vehicle; that two of the men escorted the third man to a car parked behind the first car, and parallel to his truck; that the officer then directed him to move his truck forward, which he did, until the officer and his coworker directed him to stop. Most significantly, Cerillo testified unequivocally that his truck never veered outside of the lane in which he was driving. This evidence was sufficient to demonstrate that the Hudson driver merely complied with the directives of a police officer and did not operate his vehicle in a careless manner so as to initiate contact with the plaintiff or the parked car (see *Michel v Gressier*, 298 AD2d 507).

Although the IAS court apparently concluded that the lack of direct evidence as to how the accident occurred necessarily constitutes a triable issue of fact, established Court of Appeals precedent does not support this view. To establish a claim of negligence based wholly on circumstantial evidence, a plaintiff must demonstrate the existence of "facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred" (*Schneider v Kings Highway Hosp. Ctr.*, 67 NY2d 743, 744). While plaintiff's proof need not exclude every other possible cause of the accident, it "must render those other causes sufficiently 'remote' or 'technical' to enable the jury to reach its verdict based not upon speculation, but upon the logical inferences to be drawn from the evidence" (*id.*). In short, plaintiff must prove "that it was 'more likely' or 'more reasonable' that

2. We reject plaintiffs' argument that Cerillo's testimony concerning the police officer's gesture to move forward constitutes inadmissable hearsay, since it was offered solely to establish that the "statement" was made, not for the truth of the matter asserted (see 57 NY Jur 2d, Evidence and Witnesses § 263, at 558-559).

the alleged injury was caused by the defendant's negligence than by some other agency" (*Gayle v City of New York*, 92 NY2d 936, 937 [citations omitted]).

The proof submitted by plaintiff in opposition to Hudson's motion did not give rise to an inference of Hudson's negligence. It also suffers from additional flaws. First, plaintiff attached a police report of the accident which states: "At TPO victim was pinned between veh. 1 and veh. 2 when veh. 1 hit open door on veh. 2 hitting victim." Nothing in the record, however, establishes the identity of the officer who made the report, nor the source of the information contained therein. Even if the author of the report was the source, nothing in the report itself indicates that the information was based on the officer's personal observation of the accident. Although plaintiff surmises that the officer who took information from Cerillo after the accident must have observed the accident, and therefore must be the source of the information in the report, this is nothing more than speculation on plaintiff's part.

It is well established that police accident reports are admissible as business records so long as the report is made based upon the officer's personal observations and while carrying out their police duties (*see Yeargans v Yeargans*, 24 AD2d 280, 282; *see also Mooney v Osowiecky*, 235 AD2d 603, 604). Conversely, police reports have consistently been held inadmissible where the information contained in the report "came from witnesses not engaged in the police business in the course of which the memorandum was made" (*Yeargans v Yeargans*, 24 AD2d 280, 282, citing *Johnson v Lutz*, 226 App Div 772, *affd* 253 NY 124). In this case, as there is no evidence as to the source of the information in the report, whether that person was under a business duty to make it, or whether some other hearsay exception would render the statement admissible, it should not have been considered by the IAS court in opposition to Hudson's motion (*see Gagliano v Vaccaro*, 97 AD2d 430 [since source of information in police accident report was not identifiable except by possible inference, it was error to admit report]; *Cornier v Spagna*, 101 AD2d 141, 147 [police report signed by officer not present at scene "inexplicably admitted" at trial, denying defendant opportunity to test whether report based on eyewitness observations]).[3]

Even if admissible, the police accident report does not assist plaintiff in establishing a prima facie case of negligence against

---

3. The assertion in plaintiffs' brief that one of the officers has recently been located, and his prediction that this witness will authenticate the police report, are, in the absence of an affidavit from the witness, insufficient to

Hudson. At best, it merely confirms that Hudson's truck came into contact with the door of the adjacent vehicle, pinning Holliday in the process. It raises no inference that the Hudson truck veered from its lane. Nor does it dispel the possibility that Holliday opened the door into the truck, or otherwise initiated contact with the truck himself. In short, it provides no additional information concerning the cause of the accident from which the negligence of Cerillo could be inferred.

Plaintiff also submitted a handwritten statement of Holliday's coworker, Reginald McDermon, dated June 1, 2000. The statement, signed by McDermon and notarized, concludes with the statement: "I have read the above statement. It is an accurate representation of my remarks, and is true to the best of my ability." Although McDermon only "vaguely remembers" many of the details of the incident, he does state that "[t]he front right of the [Hudson] truck hit the front left of our vehicle," pinning Holliday in the process.

Hudson argues that McDermon's unsworn statement should not be considered since, despite being notarized, it lacks a notary's jurat or other form of an oath so as to "awaken the conscience and impress the mind of the person taking it in accordance with his religious or ethical beliefs" (CPLR 2309 [b]). In response, plaintiff cites cases where such unsworn statements were held admissible by this Court despite similar flaws (*see e.g. Collins v AA Truck Renting Corp.*, 209 AD2d 363). We need not resolve this question since the IAS court expressly disclaimed reliance on this document in denying Hudson's motion, and, in any event, the McDermon statement should have been precluded on the alternative ground that plaintiffs failed to disclose it until they submitted their opposition to Hudson's motion in December 2001, many years after submitting a discovery response stating "[p]laintiff has not obtained statements from witnesses" (*see* CPLR 3101 [h]), and well over a year after the statement was signed by McDermon.

Nor may plaintiffs avail themselves of the reduced standard of proof in wrongful death actions under the *Noseworthy* doctrine (*see Noseworthy v City of New York*, 298 NY 76, 80). In the first instance, this is not a wrongful death case. The complaint seeks recovery for personal injuries and the IAS court denied plaintiffs' motion for leave to amend (*see Clarke v New York City Tr. Auth.*, 174 AD2d 268, 275 [*Noseworthy* charge in error where wrongful death claim withdrawn and decedent survived the accident and died a year later of unre-

raise a triable issue of fact (*see Dubiel v Parkchester Mgt. Corp.*, 284 AD2d 223, 224, *lv denied* 97 NY2d 606).

lated causes]). In addition, this case is clearly distinct from *Noseworthy* because Holliday did not die until eight years after the accident and five years after the action was commenced. Thus, this is not a case where only defendant's interested witness was available to testify about the accident. Plaintiffs had ample opportunity to obtain an affidavit from Holliday before his death, or otherwise move the case forward to ensure that his version would be memorialized in a deposition or otherwise, but failed to do so.

Even if *Noseworthy* was applicable to this case, the rule does not " 'shift the burden of proof or eliminate the need for plaintiffs to introduce evidence of a prima facie case [of negligence]' [citation omitted]" (*Lynn v Lynn*, 216 AD2d 194, 195 [defendant entitled to summary judgment where amnesiac plaintiff relies solely on inferences as to causation based on speculation]). "[E]ven in a wrongful death case, '[s]peculation, guess and surmise * * * may not be substituted for competent evidence, and where * * * there are several possible causes of an accident, one or more of which a defendant is not responsible for, a plaintiff cannot recover without proving that the injury was sustained wholly or in part by a cause for which the defendant was responsible' [citations omitted]" (*Johnson v Sniffen*, 265 AD2d 304, 304). Here, the admissible evidence suggests many other possible causes of the accident, including the negligence of Holliday or the police officer, and plaintiff has failed to raise an issue of fact that it was "more likely" that Cerillo's negligence caused the accident rather than some other agency (*Gayle v City of New York*, 92 NY2d 936, 937; *Michel v Gressier*, 298 AD2d 507; *Nigri v City of New York*, 294 AD2d 477, 478; cf. *Maresca v Lake Motors*, 32 AD2d 533, 534, *affd* 25 NY2d 716).

In light of the deficiencies in plaintiffs' opposition, Cerillo's version of the accident stands uncontradicted in the record. As no inference of negligence may be drawn from Cerillo's testimony, and any determination as to the cause of Holliday's injuries would be based on pure speculation, Hudson is entitled to summary judgment dismissing the complaint (*see Dubiel v Parkchester Mgt. Corp.*, 284 AD2d 223, *lv denied* 97 NY2d 606; *Byrd v New York City Tr. Auth.*, 228 AD2d 537).[4]

Plaintiffs have cross-appealed from the IAS court's denial of their cross motion for leave to amend the complaint to add a cause of action for wrongful death. Plaintiffs argue that it was

---

4. In light of this determination, we need not consider Hudson's alternative argument that the police officer's directives rendered it immune from liability.

an abuse of discretion to deny the cross motion because leave to amend should be freely given (CPLR 3025 [b]), and because Hudson cannot show that it would be prejudiced by the amendment since it was given notice several years ago of plaintiffs' theory that Holliday's psychological injuries resulting from the accident led to his neglect of his diabetic condition, and ultimately to his death.

The IAS court's holding that Hudson would be seriously prejudiced by the amendment was a proper exercise of discretion. The procedural history of this case shows that plaintiff did not move to amend the complaint to add a wrongful death cause of action until 1999, five years after Holliday died, and 10 years after the action was commenced. After that motion was denied for failure to provide a medical affidavit in December 1999, and no appeal was taken, plaintiffs took no action for two years. Only after discovery was completed, and in response to Hudson's motion for summary judgment, did plaintiffs finally make a second motion to amend in October 2001, this time offering a medical affidavit. In light of this extended period of delay by plaintiffs while in full possession of the facts necessary to support the amendment, and the absence of any excuse for waiting until the eve of trial before seeking to amend for a second time, these facts alone warranted the denial of defendant's motion (see Smith v Hercules Constr. Corp., 274 AD2d 467, 468 [leave to amend properly denied where plaintiff waited until eve of trial, more than three years after preliminary conference order directing such amendment]; Jablonski v County of Erie, 286 AD2d 927, 928 [plaintiff failed to establish reasonable excuse for two-year delay in moving to amend to add wrongful death claim, brought on eve of trial]).

Contrary to plaintiffs' argument, Hudson has convincingly demonstrated that it would be prejudiced by the amendment. After plaintiffs elected not to appeal the December 1999 denial of their first motion to amend, and did not promptly renew the motion to correct the deficiency in proof, Hudson could reasonably assume that it would not be forced to defend a wrongful death claim. Consequently, Hudson sought no discovery relevant to such a claim. Although plaintiffs argue that such wrongful death discovery occurred when Hudson took their depositions in June and August 2001, Hudson persuasively responds that its discovery requests and trial preparation would have been drastically different had plaintiffs timely renewed their motion to amend (see Prince v O'Brien, 256 AD2d 208, 211-212 [court erred in permitting plaintiff to amend complaint on eve of trial where defendant would suffer preju-

dice by the late addition of new theory of recovery]). For example, it would have asked plaintiffs more detailed questions about their relationship with Holliday at deposition, and would have sought the nonparty depositions of Holliday's five other children (*id.* [defendant prejudiced where depositions already held and no questions were asked relevant to new theory of recovery permitted by amendment]). Accordingly, as plaintiffs' unexplained delay deprived Hudson of the opportunity to prepare a defense against this new claim, the IAS court properly denied plaintiffs' cross motion to amend the complaint. Concur—Andrias, J.P., Rosenberger, Marlow and Gonzalez, JJ.