■ MARIA KATECHIS, as Administratrix of the Estate of NIKO-LAOS KATECHIS, Deceased, Respondent, v OUR LADY OF MERCY MEDICAL CENTER, Defendant, and PAVLOS KYMISSIS, M.D., Appellant. [828 NYS2d 58]—

Order, Supreme Court, Bronx County (Patricia Anne Williams, J.), entered October 20, 2005, which, to the extent appealed from as limited by the briefs, denied part of the motion by defendant Kymissis for summary judgment and granted plaintiff's cross motion to amend her bill of particulars, unanimously reversed, on the law, without costs, the motion granted in its entirety, and the cross motion denied. The Clerk

---

is directed to enter judgment in favor of defendant-appellant dismissing the complaint as against him.

Plaintiff's decedent was treated for bipolar disorder from December 1986 until his death on February 27, 2001. His treatment consisted of visits with psychiatrists and consumption of various oral medications, including Lithium, Haldol and Ativan.

Decedent's treatment by defendant Kymissis began on or about March 16, 2000 and was occasioned by the death of his prior psychiatrist. Upon commencing treatment, Dr. Kymissis changed decedent's medication regimen. He substituted Risperdal for Haldol, as it was a newer drug with fewer side effects, and Klonopin for Ativan because it was a longer lasting medication. Dr. Kymissis did, however, continue to prescribe Lithium.

Dr. Kymissis last treated decedent on January 22, 2001. Three days later decedent was admitted to the psychiatric unit of defendant Medical Center as an emergency patient. He was administered Haldol in the emergency room, which was continued in varying doses, as well as Ativan until February 6, 2001, when all medications were "held" as the result of the onset of neuroleptic malignant syndrome (NMS), a severe side effect and complication resulting from antipsychotic medications. According to plaintiff's medical expert, decedent suffered "coronary pulmonary arrest" on February 27, 2001 and died as a result. The death certificate listed as the cause of death "Neuroleptic malignant syndrome following the administration of halperidol for treatment of bipolar disorder."

Plaintiff thereafter commenced this action against the Medical Center and Dr. Kymissis, alleging, inter alia, that the latter committed medical malpractice when he replaced decedent's Haldol with Risperdal.

Decedent's treating psychiatrist while at the Medical Center was Dr. Custura, who testified at his deposition that he first saw decedent on January 26, 2001. At that point, decedent had been administered Haldol in the emergency room and was continued on that medication, in varying doses, until February 6. Dr. Custura testified that on or about January 29 he had a conversation with Dr. Kymissis, wherein he advised of the changes in medication and that Dr. Kymissis "agreed with the changes that we made," i.e., the dosages of Haldol, Lithium and Ativan. However, at his deposition, Dr. Kymissis testified that, although he could not remember the name of the doctor who called from the Medical Center, during a 30-to-40-second conversation, he told that doctor decedent was taking Risperdal, Lithium and Clonazepam (the generic name for Klonopin). He

further testified that he made no medical decisions regarding decedent after January 22.

Dr. Kymissis thereafter moved for summary judgment dismissing the complaint against him. In support, he submitted expert affirmations from a psychiatrist (Dr. Rubinstein) and a pharmacologist (Dr. Stier). Dr. Rubinstein opined that Dr. Kymissis's substitution of Risperdal for Haldol was within good and accepted medical practice, in light of decedent's medical and psychiatric history. Dr. Stier's affirmation stated that NMS usually occurs soon after the initiation of neuroleptic treatment. Since Dr. Kymissis had substituted Risperdal for Haldol on March 16, 2000, and the onset of NMS did not occur until February 6, 2001, Dr. Stier opined that this change could not have been the cause of the NMS that ultimately proved fatal to decedent.

Plaintiff cross-moved to amend her bill of particulars to allege for the first time that Dr. Kymissis had committed medical malpractice by failing to monitor decedent's Lithium levels while under his care. In support of this cross motion, plaintiff submitted an affirmation from Dr. Newhouse, who opined that the failure of Dr. Kymissis to monitor and evaluate decedent's responses to the prescribed medications, including Lithium, was the cause of decedent's admission to the Medical Center where he was administered different medications that ultimately brought on NMS and caused his death.

The IAS court determined that Dr. Kymissis's substitution of Risperdal for Haldol did not constitute malpractice and granted the motion for summary judgment with respect to that change of medication. However, the court denied the motion as it pertained to the Lithium treatment issue as raised in plaintiff's proposed amended bill of particulars and granted plaintiff's cross motion to amend.

CPLR 3025 (b) provides that leave to amend pleadings shall be freely given, and this rule has been applied to the amendment of bills of particulars as well, in the absence of prejudice or surprise (see *Jones v Lynch*, 298 AD2d 499 [2002]; *Sahdala v New York City Health & Hosps. Corp.*, 251 AD2d 70 [1998]). However where the proposed amendment clearly lacks merit and serves no purpose but to needlessly complicate discovery and trial, such a motion should be denied (*Thomas Crimmins Contr. Co. v City of New York*, 74 NY2d 166, 170 [1989]).

Plaintiff's expert's affirmation in support of the motion to amend did not demonstrate a causal connection between the failure to monitor decedent's Lithium levels and his death. The expert's affirmation (name redacted) stated that the alleged

failure to monitor the Lithium levels in decedent's blood "was a substantial cause for his emergency admission to the psychiatric unit of Our Lady of Mercy Medical Center where he was administered the replacement neuroleptic drug, Haldol, *which resulted in Neuroleptic Malignant Syndrome which ultimately caused Mr. Katechis' death*" (emphasis added). Assuming arguendo, that the alleged failure to monitor Lithium levels constituted a deviation from accepted medical standards, this failure resulted, according to plaintiff's expert, only in decedent's admission to defendant Medical Center. The expert opined that the cause of death was NMS brought on by the administration of a different drug. This falls far short of the "competent medical proof of the causal connection between the alleged malpractice and the death of the" patient so as to warrant amendment of a bill of particulars in a medical malpractice action (*see McGuire v Small*, 129 AD2d 429 [1987]).

As no causal connection between the allegations of malpractice and decedent's death has been established, the proposed amendment to the bill of particulars lacks merit. The motion to amend should have been denied (*Haussmann v Wolf*, 187 AD2d 371 [1992]) and the motion for summary judgment by Dr. Kymissis granted in all respects. Concur—Saxe, J.P., Sullivan, Nardelli, Sweeny and Malone, JJ.