OPINION OF THE COURT
Lucy Billings, J.
*1159 I. Background
Plaintiff, on her and her deceased daughter’s behalf, sues defendants for medical malpractice and the daughter’s wrongful death. The remaining defendants, defendant Suvannavejh and defendants Zucchero and Lawrence Hospital Center, separately move for summary judgment dismissing plaintiff mother’s claims for emotional distress and lost society, comfort, and affection. Suvannavejh also seeks dismissal of the mother’s claims for lost support, services, and protection. (CPLR 3212 [b], [e].)
The difficult issue concerns the mother’s claim for emotional distress: whether it falls under Broadnax v Gonzalez (2 NY3d 148 [2004]), where a mother may recover for emotional distress when her child is stillborn due to medical malpractice, or Sheppard-Mobley v King (4 NY3d 627 [2005]), where a mother may not recover for emotional distress when her child is born alive and then dies due to malpractice. In the latter instance, the court must dismiss the mother’s claim for emotional distress, but may retain her claims for lost support, services, or protection, insofar as they are of pecuniary value, and other pecuniary loss from the child’s wrongful death.
In opposition to defendants’ motions, the mother maintains that her action is closer to Broadnax, and the current record raises a factual issue whether her child was stillborn, since defendants do not show that the child took a breath or had a heartbeat. Defendants point out, however, that insofar as they failed to make that showing, it was unnecessary, because the mother pleaded a Sheppard-Mobley claim. Consequently, plaintiff mother now moves to amend her complaint and bills of particulars to clarify her alternative theories.
For the reasons explained below, the court determines defendants’ motions for partial summary judgment and plaintiffs subsequent motion to amend her pleadings as follows. The court grants plaintiffs motion to amend her complaint and bill of particulars as specified, on the condition that the note of issue is vacated to provide defendants an opportunity to move again for partial summary judgment on her claim for emotional distress, unless defendants stipulate that the note of issue not be vacated. (CPLR 3025 [b]; 3212 [a].) Therefore the court denies defendants’ current motions for partial summary judgment without prejudice, insofar as they seek dismissal of her claim for emotional distress. (CPLR 3212 [b], [e].)
Regarding the claims that remain unaffected by plaintiff’s proposed amendments, the court denies defendants’ current *1160 motions, with prejudice, insofar as they seek dismissal of the mother’s claims for lost support, services, or protection that are of pecuniary value or other pecuniary loss from the child’s wrongful death. The court grants defendants’ current motions insofar as they seek dismissal of the mother’s claims for loss of the child’s services during the child’s life and for loss of the child’s society, comfort, and affection, whether during the child’s life or due to the child’s wrongful death. (Id.)
II. Plaintiff Mother’s Claims for Pecuniary Loss
If plaintiff ultimately prevails on her claim that her child was stillborn due to medical malpractice and never born alive, then the expectant mother may recover for her resulting emotional distress, but may not recover on behalf of the unborn child, who, having not been born alive, would have no estate. (Sheppard-Mobley v King, 4 NY3d at 636-637; Broadnax v Gonzalez, 2 NY3d at 154-155.) Currently, however, plaintiff still maintains her alternative theory of relief: that her child was born alive and then died due to malpractice. If plaintiff instead prevails on this claim, then she may not recover for her resulting emotional distress (Sheppard-Mobley v King, 4 NY3d at 634; Warnock v Duello, 30 AD3d 818, 819 [3d Dept 2006]), but may recover on behalf of her deceased child’s estate for any pecuniary losses resulting from her child’s death.
Pecuniary losses may include medical and funeral expenses and loss of future voluntary support and assistance that the child would have provided to her mother, even of only a nominal value. (Parilis v Feinstein, 49 NY2d 984, 985 [1980]; Liff v Schildkrout, 49 NY2d 622, 633 [1980]; Lopez v Gomez, 305 AD2d 292, 292 [1st Dept 2003].) The child’s immediate death does not totally extinguish the claims for lost services or pecuniary loss as long as the injuries are not speculative.
The burden falls on defendants who move for summary judgment dismissing these claims to establish that the alleged pecuniary injuries are speculative in plaintiffs circumstances, a showing defendants fail to make. Therefore the court denies defendants’ motions with prejudice, insofar as they seek dismissal of plaintiff mother’s claims for lost support, services, or protection that are of pecuniary value or other pecuniary loss from the child’s wrongful death. At trial, of course, plaintiff will bear the burden to demonstrate the pecuniary losses to the estate.
These claims for pecuniary losses, however, survive only as long as plaintiff continues to pursue her wrongful death theory. *1161 If she prevails on her claim that her child was stillborn due to medical malpractice and never born alive, then the expectant mother must abandon all claims premised on the wrongful death of a child born alive who then died due to malpractice. They include the claims for lost support, services, protection, or other assistance from the child of pecuniary value, due to her death. (Sheppard-Mobley v King, 4 NY3d at 636-637; Broadnax v Gonzalez, 2 NY3d at 154.)
III. Plaintiff Mother’s Claims for Lost Society, Comfort, and Affection
Plaintiff’s claimed loss of her child’s services or society, premised on her child’s short life, fail in any event. Although a claim for loss of a child’s services during the child’s life may be viable when a child attains an age and capability to provide services, the short life span of plaintiffs child does not allow for such a claim. Given the child’s short life, no such losses are demonstrable.
In no instance may a parent claim loss of a child’s society, comfort, or affection. (E.g. Endresz v Friedberg, 24 NY2d 478, 488 [1969].) Plaintiffs loss of her child’s society during the child’s short life is not compensable. (Devito v Opatich, 215 AD2d 714, 715 [2d Dept 1995]; see De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055 [1983]; De’Leone v City of New York, 45 AD3d 254, 255 [1st Dept 2007].) Nor is lost society, comfort, or affection part of the compensable pecuniary losses suffered by the décedent child’s distributees due to the child’s death. (EPTL 5-4.3; Hernandez v New York City Health & Hosps. Corp., 78 NY2d 687, 693 [1991]; Gonzalez v New York City Hous. Auth., 77 NY2d 663, 667 [1991]; Johnson v Manhattan & Bronx Surface Tr. Operating Auth., 71 NY2d 198, 203 [1988]; Sand v Chapin, 238 AD2d 862, 863-864 [3d Dept 1997].) Such losses are never compensable, except insofar as they may bear on the mother’s emotional distress from a stillbirth due to medical malpractice.
IV Plaintiffs Motion to Amend Her Pleadings
A. Applicable Standards
CPLR 3025 (b) permits plaintiff to amend her complaint and bills of particulars as long as the proposed claims have merit (Fellner v Morimoto, 52 AD3d 352, 353 [1st Dept 2008]; Hoppe v Board of Directors of 51-78 Owners Corp., 49 AD3d 477 [1st Dept 2008]; Sabo v Alan B. Brill, EC., 25 AD3d 420, 421 *1162 [1st Dept 2006]; Thompson v Cooper, 24 AD3d 203, 205 [1st Dept 2005]) and the amendments do not unfairly surprise or otherwise substantially prejudice defendants. (Cherebin v Empress Ambulance Serv., Inc., 43 AD3d 364, 365 [1st Dept 2007]; Katechis v Our Lady of Mercy Med. Ctr., 36 AD3d 514, 516 [1st Dept 2007]; Thompson v Cooper, 24 AD3d at 205; Haggerty v Everett Realty, 21 AD3d 268, 269 [1st Dept 2005].) As the party seeking the amendments, plaintiff must demonstrate her proposed claims’ merit. (Hoppe v Board of Directors of 51-78 Owners Corp., 49 AD3d 477 [2008]; Nathanson v Tri-State Constr. LLC, 48 AD3d 373, 374 [1st Dept 2008]; Robinson v Canniff, 22 AD3d 219, 220 [1st Dept 2005]; Zaid Theatre Corp. v Sona Realty Co., 18 AD3d 352, 355 [1st Dept 2005].) If she demonstrates meritorious claims, then the issue posed by her motion boils down to whether her added claims now would change defendants’ position or hinder their defenses in a way that would have been avoided had the amendments been pleaded originally, so as now to prejudice defendants. (Whalen v Kawasaki Motors Corp., U.S.A., 92 NY2d 288, 293 [1998]; Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23 [1981]; Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Masterwear Corp. v Bernard, 3 AD3d 305, 306-307 [1st Dept 2004].)
B. The Proposed Claims’ Merit
In opposition to defendants’ current motions for partial summary judgment, plaintiff maintains that the record raises a factual issue whether her child was stillborn, because defendants do not carry their burden to show that the child took a breath or had a heartbeat or otherwise show that the child was born alive. Public Health Law § 4130 (1) defines “Live birth” as: “a product of conception . . . which, after such separation, breathes or shows any other evidence of life such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles.” Since defendants point to the child’s Apgar score of one 10 minutes after birth, plaintiff focuses on defendants’ failure to show that this score was due to a heartbeat rather than attempted resuscitation. As pointed out above, however, if defendants thus far have failed to muster further evidence of a live birth, that omission was based on their interpretation of plaintiffs prior pleadings: that plaintiff conceded a live birth and nowhere pleaded the alternative theory that the child was stillborn. (Warnock v Duello, 30 AD3d at 819.) Under those circumstances, plaintiff may not rely on the unpleaded theory to defeat summary judgment. (Abalola v Flower Hosp., 44 AD3d *1163 522 [1st Dept 2007]; Rose v Onteora Cent. School Dist., 52 AD3d 1161, 1163 [3d Dept 2008]; Marchetti v East Rochester Cent. School Dist., 26 AD3d 881 [4th Dept 2006]; Golubov v Wolfson, 22 AD3d 635, 636 [2d Dept 2005]; see Mainline Elec. Corp. v Pav-Lak Indus., Inc., 40 AD3d 939, 939-940 [2d Dept 2007].)
In the context of plaintiffs motion to amend her pleadings to incorporate that alternative theory, the burden shifts to plaintiff, as the party seeking the amendments, to support them with admissible evidence. (Hoppe v Board of Directors of 51-78 Owners Corp., 49 AD3d 477 [2008]; Nathanson v Tri-State Constr. LLC, 48 AD3d at 374; Robinson v Canniff, 22 AD3d at 220; Zaid Theatre Corp. v Sona Realty Co., 18 AD3d at 355.) Plaintiff first relies on defendants’ records. The parties stipulate that the court may consider all such records, whether presented in support of defendants’ motions for summary judgment or plaintiffs motion to amend her pleadings, as authenticated and admissible for purposes of the motions. Lawrence Hospital Center’s records for plaintiff mother’s delivery report: “Intrauterine Death” and “Mother with Single Stillborn.” (Aff of Howard S. Schwartz, M.D., exhibit A at 2.)
Upon a full review of defendants’ records, Howard S. Schwartz, M.D. attests to his conclusion that the fetus died in útero due to the placenta’s detachment from the uterine wall, which interfered with circulation of oxygen and nourishment and caused brain shock and then cessation of brain and brain stem activity before the delivery. In particular, he cites the records of the delivery and its aftermath as supporting his conclusion. The Apgar scores show no observable activities of life, except a low heartbeat 10 minutes after delivery during resuscitation efforts that stimulated muscle, but did not prove successful or manifest life at any point.
C. Plaintiffs Inexplicable Delay
Plaintiff maintains that her original complaint and bills of particulars alleged both a claim for the wrongful death of a child born alive and a claim for the emotional distress of a mother whose fetus died in útero.
1. The Original Complaint
In fact, the original complaint refers to both types of claims together in a single cause of action. Plaintiffs first cause of action alleges defendants caused (1) “the mental anguish and emotional distress sustained by Plaintiff DIONNE CHARLES as a result of the traumatic delivery of her infant daughter” and *1164 (2) “the mental anguish and emotional distress sustained by Plaintiff DIONNE CHARLES as a result of the death of her infant daughter.” (Aff in opposition of Michael N. Romano [hereinafter Romano aff in opposition], exhibit A, If 52 [emphases added].) The ambiguity lies in the terms “delivery,” which may refer to a child born alive or a stillborn fetus, and “death,” which may refer to after birth or in útero. Only the latter, however, permits recovery for emotional distress.
The first cause of action continues by alleging lost “services” (id. 1111 53, 54), for which plaintiff may recover based only on the child’s wrongful death after being born alive, but then alleges “emotional distress,” for which plaintiff may recover based only on a stillbirth, as well as “economic loss” based on the wrongful death. (Id.) A cause of action alleging the child was born alive and then died due to malpractice, yet seeking to recover for emotional distress based on this claim, would not be viable. (Sheppard-Mobley v King, 4 NY3d at 634; Warnock v Duello, 30 AD3d at 819.)
Plaintiffs second cause of action unambiguously alleges the child’s own pain and suffering during a short life and her wrongful death. The third cause of action unambiguously alleges the child’s wrongful death and the lost value of her support, services, protection, and other pecuniary benefits to her estate, due to her death. Plaintiffs fourth cause of action also is premised on the child’s wrongful death, alleging the child’s own injuries during a short life before that death, as well as the mother’s own injuries, due to defendants’ failure to obtain the mother’s informed consent to their treatment.
Insofar as plaintiffs original first cause of action alleges alternative, different theories of recovery, albeit difficult to untangle, and her proposed amended complaint now seeks to untangle the confusion and unambiguously present those separate theories, CPLR 3014 and 3017 (a) permit them in pleadings, even if the theories are inconsistent. (Two Queens v Scoza, 296 AD2d 302, 303 [1st Dept 2002]; Gold v 29-15 Queens Plaza Realty, LLC, 43 AD3d 866, 867 [2d Dept 2007]; West Park Assoc., Inc. v Cohen, 43 AD3d 818, 819 [2d Dept 2007]; Auguston v Spry, 282 AD2d 489, 491 [2d Dept 2001]; see CPLR 3013; Hicksville Dry Cleaners, Inc. v Stanley Fastening Sys., L.P., 37 AD3d 218 [1st Dept 2007]; Seven Seventeen Corp. v JP Morgan Chase & Co., 32 AD3d 802 [1st Dept 2006]; New Dimension Solutions, Inc. v Spearhead Sys. Consultants [US], Ltd., 28 AD3d 260 [1st Dept 2006].) Ultimately, however, plaintiff must elect her ave *1165 nue of relief and may recover based on only one of the inconsistent theories, not both.
2. The Original Bills of Particulars
Defendants might have used their demands for bills of particulars as well as disclosure devices to untangle the confusion left by plaintiff’s original first cause of action: to amplify the pleading, define the avenues of plaintiffs proof, and prevent defendants’ surprise down the road. (Harris v Ariel Transp. Corp., 37 AD3d 308, 309 [1st Dept 2007]; Brannigan v City of New York, 224 AD2d 340, 341 [1st Dept 1996]; Miccarelli v Fleiss, 219 AD2d 469, 470 [1st Dept 1995].) Instead, their demands mainly assumed that plaintiff alleged only a wrongful death theory of recovery. Because the demands focussed on the claims on behalf of the decedent, plaintiff responded in kind, with little occasion to focus on any claims premised on a stillbirth.
When asked about defendants’ negligence, malpractice, or departure from medical standards, since plaintiff claimed no negligent injury to the fetus apart from injury to herself unless the fetus was born alive, she responded that, in that event, defendants allowed the “decedent” to suffer birth asphyxia and seizures “following delivery” and “to expire” due to oxygen loss. (Romano aff in opposition, exhibit C; verified bill of particulars as to Chaisurat Suvannavejh, M.D. [hereinafter Suvannavejh], 11 2 at 3, 114 at 8; verified bill of particulars as to Susan Zucchero, R.N. [hereinafter Zucchero], H 3 at 3; verified bill of particulars as to Lawrence Hospital Center [hereinafter Lawrence Hospital], II 3 at 5; see CPLR 3043 [a] [3]; Rodriguez v Booth Mem. Med. Ctr., 14 AD3d 688, 689 [2d Dept 2005].) For the same reason, when asked about the medical standards defendants departed from, plaintiff set forth standards “to not allow” the decedent to suffer those conditions and “expire” due to oxygen loss. (Romano aff in opposition, exhibit C; Suvannavejh 11 3 at 6; Zucchero 1Í 4 at 5; Lawrence Hospital 114 at 8.)
Likewise, when asked about injuries, plaintiff listed injuries to herself and injuries to the fetus that affected the child, in the event the fetus was born alive and the child sustained a short life. (See CPLR 3043 [a] [6]; Rodriguez v Booth Mem. Med. Ctr., 14 AD3d at 689.) Answering specifically about “injuries claimed on behalf of the decedent,” plaintiff included fetal distress before labor; loss of heart rate before delivery; respiratory failure; mechanical ventilation; decreased blood pressure, oxygen saturation, and heart rate; car dio respiratory arrest; birth as *1166 phyxia; loss of enjoyment of life; and ultimately death. (Romano aff in opposition, exhibit C; Zucchero 115 at 5; Lawrence Hospital 1Í 6 at 9; see Suvannavejh 1i 12 at 11.) Answering specifically about injuries plaintiff herself sustained, while she claimed “Death of a child” as opposed to stillbirth, recovery for her own injury from such a death is sustainable only if it is in útero. (Id.; Suvannavejh IT 12 at 12; Zucchero 1f 5 at 6; Lawrence Hospital If 6 at 10.) Moreover, plaintiff claimed “emotional distress,” for which she may recover only in the event of a stillbirth, as well as lost services of a child. (Id.)
Each demand about the “cause of death” specified the death of the decedent, not the fetus. (Id.; Suvannavéjh If 16 at 14; Zucchero IT 7 at 7; Lawrence Hospital 1f 8 at 10.) Although plaintiff listed “cardio respiratory arrest secondary to birth asphyxia,” which alone might apply to a child born alive, she attributed those conditions to a root cause: “abruptio placenta,” the placenta’s detachment from the uterine wall, in útero. (Id.) When asked about specific expenses, such as “funeral expenses,” as a result of the death of the decedent, plaintiff likewise referred to the “decedent,” not the fetus, being buried. (Id.; Suvannavejh 11 22 at 15; Zucchero 1f 10 at 7; Lawrence Hospital 1f 11 at 11.)
When asked the dates and places of birth and death of “the decedent” and residence at those times, plaintiff likewise gave the date, place, and residence in the event the child was born alive and then died. (Id.; Suvannavejh 1f 10 at 10; Zucchero 1f 1 at 1, 1f 6 at 6; Lawrence Hospital If 1 at 1, 1f 7 at 10.) When asked about the time of treatment at the hospital, for purposes of plaintiffs claims on behalf of the child’s estate, plaintiff gave the full time period potentially supported by the medical records, from “birth” at 11:45 a.m. to “death” at 2:38 p.m. on August 29, 2003. (Id.; Suvannavejh 1f 13 at 12, If 15 at 13; see id. 1T1T16, 19 at 14.) Since none of these inquiries, similar to the inquiries above, pertained to a stillborn fetus, neither did plaintiffs responses focus on that potential theory, which does not involve a “birth” or “death.”
3. Reasons for the Lack of Clarity and the Delay in Clarification
Consequently, even if plaintiffs responses may have misled defendants, the fault does not necessarily or exclusively lie with plaintiff. Defendants’ analysis of plaintiffs original first cause of action failed to probe sufficiently, to either lay bare the stillbirth theory or put it to rest. Instead, defendants took a *1167 stock approach to demanding particulars and disclosure, without tailoring their inquiries to pin down plaintiffs theory, or theories. Nor did defendants, upon receipt of plaintiffs bills, claim that they did not sufficiently alert defendants as to her theories of liability and injury. (DeJesus v New York City Hous. Auth., 46 AD3d 474, 475 [1st Dept 2007]; Alvarado v New York City Hous. Auth., 302 AD2d 264, 265 [1st Dept 2003]; Miccarelli v Fleiss, 219 AD2d at 470; see Rodriguez v Booth Mem. Med. Ctr., 14 AD3d at 689.) While neither that first cause of action nor each particular in plaintiffs original bills is the model of clarity, defendants’ misguided approach is not entirely attributable to plaintiff. (See CPLR 3013; Hicksville Dry Cleaners, Inc. v Stanley Fastening Sys., L.P., 37 AD3d 218 [2007]; Seven Seventeen Corp. v JP Morgan Chase & Co., 32 AD3d 802 [2006]; New Dimension Solutions, Inc. v Spearhead Sys. Consultants [US], Ltd., 28 AD3d 260 [2006].)
Plaintiff, on the other hand, does not fully explain why she waited so long to clarify her theories of recovery. As she now points out, defendants’ records themselves reveal a stillbirth. Although this evidence in defendants’ own records may not justify their narrow view of plaintiffs theories (Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Zaid Theatre Corp. v Sona Realty Co., 18 AD3d at 355; Uzcha v New York City Health & Hosps. Corp., 288 AD2d 48 [1st Dept 2001]; Abdelnabi v New York City Tr. Auth., 273 AD2d 114, 115 [1st Dept 2000]), by the time plaintiff obtained these records substantiating her alternative theory, surely she appreciated defendants’ misguided, narrow view. In fact, as she now maintains that her alternative theory was evident in her original complaint, she did not need even the records, let alone Dr. Schwartz’s analysis, to enlighten her to that theory. Her excuse for waiting until the final argument of defendants’ summary judgment motions to enlighten defendants is therefore wanting. In sum, plaintiff bases her 2009 motion to amend her pleadings on evidence and law fully known to her years earlier and fails to explain the delay once defendants’ confusion became apparent. (Chichilnisky v Trustees of Columbia Univ. in City of N.Y., 49 AD3d 388, 389 [1st Dept 2008]; Holliday v Hudson Armored Car & Courier Serv., 301 AD2d 392, 399 [1st Dept 2003]; Excelsior Ins. Co. v Antretter Contr. Corp., 262 AD2d 124, 126 [1st Dept 1999]; Prince v O’Brien, 256 AD2d 208, 211 [1st Dept 1998]; see Valdes v Marbrose Realty, 289 AD2d 28, 29 [1st Dept 2001].)
*1168 D. Prejudice to Defendants from Plaintiffs Delay
Defendants’ prejudice depends in part on the extent of their confusion in interpreting the original complaint during the years of litigation before plaintiffs opposition to their partial summary judgment motions and her proposed amended pleadings. As indicated, only in opposition to plaintiffs motion to amend her pleadings have defendants ever maintained that plaintiffs original complaint, its first cause of action or elsewhere, was ambiguous or failed to give them notice of the occurrences plaintiff sought to prove or the elements of her claims. (CPLR 3013; Hicksville Dry Cleaners, Inc. v Stanley Fastening Sys., L.P., 37 AD3d 218 [2007]; Seven Seventeen Corp. v JP Morgan Chase & Co., 32 AD3d 802 [2006]; New Dimension Solutions, Inc. v Spearhead Sys. Consultants [US], Ltd., 28 AD3d 260 [2006].) Never have defendants maintained that plaintiffs original bills of particulars or testimony or materials provided in disclosure were unresponsive to defendants’ demands. Only in opposition to plaintiffs motion do defendants now insist that the original bills are ambiguous or fail to alert defendants as to her theories of recovery. (DeJesus v New York City Hous. Auth., 46 AD3d at 475; Alvarado v New York City Hous. Auth., 302 AD2d at 265; Miccarelli v Fleiss, 219 AD2d at 470; see Rodriguez v Booth Mem. Med. Ctr., 14 AD3d at 689.)
Yet, as also suggested above, the purpose of defendants’ demands for particulars was to clarify any ambiguity and fill in any lack of specificity in the occurrences and elements of plaintiffs claims alleged in her complaint and to ascertain her precise theories of recovery. (Harris v Ariel Transp. Corp., 37 AD3d at 309; Brannigan v City of New York, 224 AD2d at 341; Miccarelli v Fleiss, 219 AD2d at 470.) Her very claim for emotional distress was enough at least to alert defendants to the task at hand in requesting particulars and disclosure. Wherever the fault lies, however, and even if plaintiff lacks an excuse for her delay in seeking the amendments, that unexcused delay dictates denial of her motion only insofar as her delay inflicts prejudice on defendants. (Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Antwerpse Diamantbank N.V. v Nissel, 27 AD3d 207, 208 [1st Dept 2006]; Abdelnabi v New York City Tr. Auth., 273 AD2d at 115; Norwood v City of New York, 203 AD2d 147, 148 [1st Dept 1994].)
1. Defendants’ Claim of Prejudice
Although defendants vehemently protest plaintiffs unexcused and inordinate delay, they fail to indicate what prejudice that *1169 delay has caused them. (Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Haggerty v Everett Realty, 21 AD3d at 269; Abdelnabi v New York City Tr. Auth., 273 AD2d at 115; see Solomon Holding Corp. v Golia, 55 AD3d 507 [1st Dept 2008]; Peach Parking Corp. v 346 W. 40th St., LLC, 52 AD3d 260 [1st Dept 2008]; Murray v City of New York, 51 AD3d 502, 503 [1st Dept 2008].) They may have spent hours at depositions while the parties explored only plaintiffs wrongful death claim, and interrogatories, document requests, and responses may have been exchanged, without defendants’ objection, also focusing on the wrongful death claim and ignoring any other theory, but defendants do not so specify. Since plaintiff still maintains her wrongful death theory, defendants would be hard-pressed to suggest that her newly proposed pleadings have caused defendants to conduct disclosure that is now unnecessary. (See Cseh v New York City Tr. Auth., 240 AD2d 270, 271 [1st Dept 1997].)
Even if plaintiffs new pleadings allege a new claim or theory of liability or recovery not found in her original pleadings, the addition of a new claim or theory, even after the note of issue, is not alone a basis to deny her motion. (Fellner v Morimoto, 52 AD3d at 353; Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Baker v 16 Sutton Place Apt. Corp., 2 AD3d 119, 121 [1st Dept 2003]; Bennett v Long Is. Jewish Med. Ctr., 51 AD3d 959, 960-961 [2d Dept 2008].) Although her repeated claim of emotional distress, belying a wrongful death theory, alerted defendants to a theory that did support that claim, surely defendants also sought a defense against a wrongful death, one being that no compensable death, after a live birth rather than in útero, occurred.
2. Actual Effect of Plaintiffs Proposed Claims
Whatever their objective in demanding particulars and disclosure, whether to uncover the basis for plaintiffs emotional distress claim, defend against a wrongful death, or otherwise, defendants now demonstrate that they already have obtained the ammunition to attack the merits of plaintiffs proposed pleadings. (Rahman v Bomber, 45 AD3d 497 [1st Dept 2007]; Antwerpse Diamantbank N.V. v Nissel, 27 AD3d at 208; Leff v Benihana of Tokyo, 304 AD2d 350, 351 [1st Dept 2003]; Valdes v Marbrose Realty, 289 AD2d at 29; see Northbay Constr. Co. v Bauco Constr. Corp., 275 AD2d 310, 312 [2d Dept 2000].) Zucchero and Lawrence Hospital now point to the hospital “DISCHARGE SUMMARY” that reports the child’s heartbeat: “Around 10 to 15 minutes of age, a heartbeat was heard and by *1170 that time, the heartbeat was well established.” (Romano aff in opposition, exhibit M at 1.) In reporting falling blood pressure, the same record obviously indicates blood pressure. “Ineffective Breathing,” in the accompanying “ADMISSION & DELIVERY RECORD,” is more susceptible of conflicting interpretations. (Id. at 3.) In response to Dr. Schwartz’s conclusion that brain and brain stem activity ceased before delivery, defendants refer to Public Health Law § 4130 (l)’s definition of “Live birth,” which does not require brain function.
Defendants also have obtained a “Certified Transcript of Birth” from the State Department of Health. (Romano aff in opposition, exhibit N.) This document is certified neither by plaintiff, nor by anyone else with demonstrated personal knowledge of the “Birth,” nor as a hospital record or a public document. (CPLR 4518 [c]; 4520, 4540 [a], [b]; People v Mertz, 68 NY2d 136, 147-148 [1986]; People v Brown, 221 AD2d 270, 271 [1st Dept 1995]; Khalil v Marion, 200 AD2d 500, 501 [1st Dept 1994]; Matter of Bronstein-Becher v Becher, 25 AD3d 796, 797 [2d Dept 2006].)
Although defendants rely on these records to support their attack on plaintiffs stillbirth theory, these very records, which defendants compiled in the first instance, immediately suggest that a live birth is far from certain. Therefore these same records also must have alerted defendants to grounds for concluding that a stillbirth occurred. In sum, based on the record compiled thus far, defendants’ oblivion to plaintiffs dual theories, is not entirely justified, and, even if it were, defendants appear prepared to defend against either theory.
As delineated above, neither side is blameless, and neither cries out for sympathy. On balance, the history of this litigation is perhaps best set aside, the proposed amended complaint and bills of particulars allowed to set the course straight, and the litigation allowed to proceed with all theories and claims exposed and all parties’ eyes wide open. While the litigation history does not suggest either that defendants have conducted unnecessary disclosure or that allowing the new pleadings will inflict the more frequent prejudice, depriving opponents of needed disclosure on new issues (Holliday v Hudson Armored Car & Courier Serv., 301 AD2d at 399-400; Excelsior Ins. Co. v Antretter Contr. Corp., 262 AD2d at 126; Prince v O’Brien, 256 AD2d at 210), the relief granted alleviates any such prejudice. The court grants plaintiffs motion on the condition that the note of issue is vacated, permitting defendants further reason *1171 able disclosure and motions for summary judgment on the additional theory, unless the parties stipulate to permit those opportunities if any defendant seeks them, without vacating the note of issue. (Cherebin v Empress Ambulance Serv., Inc., 43 AD3d at 365; Haggerty v Everett Realty, 21 AD3d at 269; Valdes v Marbrose Realty, 289 AD2d at 29; Abdelnabi v New York City Tr. Auth., 273 AD2d at 115; see Cillo v Resjefal Corp., 13 AD3d 292, 293 [1st Dept 2004].)
V The Remainder of Defendants’ Motions for Summary Judgment
In opposing plaintiff’s motion to amend her pleadings, defendants now meet their initial summary judgment burden and show that the child took a breath or had a heartbeat and that the child was born alive. Upon granting the relief plaintiff seeks, however, the court lacks the further authority to grant summary judgment before defendants answer the new complaint. Once the court has granted plaintiffs motion to serve and file her proposed amended complaint, summary judgment is impermissible, at least on the amended claims, when defendants have not yet answered the amended complaint. (CPLR 3212 [a]; e.g. Gold Medal Packing v Rubin, 6 AD3d 1084, 1085 [4th Dept 2004]; see Orenstein v Brum, 27 AD3d 352, 353 [1st Dept 2006]; Haggerty v Everett Realty, 21 AD3d at 269; Baker v 16 Sutton Place Apt. Corp, 2 AD3d at 120.)
Moreover, even the records on which defendants principally rely (Romano aff in opposition, exhibits M, N) starkly illustrate the factual issue that prevents a determination short of trial. While defendants cite the records’ indications of a child born alive, the records also indicate a fetus born dead:
“About 20 minutes prior to delivery, the infant’s heart rate was lost. At birth, the infant was floppy. There was no respiratory effort. There was no heart rate . . .
“Around 10 to 15 minutes of age, . . . there was no respiratory effort and no activity noted in the baby . . .
“While on the respirator, the infant’s pulse oximeter was not recordable . . . .” {Id., exhibit M at 1-2.)
Finally, the discharge summary reports that the infant was “declared dead at 2:38 p.m.,” not necessarily that the infant actually died at that time. {Id. at 2 [emphasis added].) The admission and delivery record reinforces the factual conflict, reporting, for example, “Heart Rate: 0.” {Id. at 3.)
*1172 VI. Conclusion
Although plaintiffs excuse for waiting so long to serve her motion to amend her pleadings is lacking, prejudice is the overarching test for denying amendment to pleadings. Allowing the amendments will take this litigation a step back, but any prejudice to defendants, demonstrated or not, will be mitigated by doing so. Confronted with the evidence supporting plaintiffs alternative theory of recovery, which denying amendment would preclude, and balancing all the factors discussed above, the court grants plaintiffs motion to amend her complaint and bills of particulars according to exhibits E and F attached to her motion. (CPLR 3025 [b].) The court considers them served and filed when the motion was served and filed. Defendants shall answer the amended complaint within 30 days after service of this order with notice of entry.
The note of issue is vacated to provide defendants an opportunity to conduct disclosure and move again for summary judgment, on plaintiffs claim for emotional distress only, unless the parties stipulate otherwise. (CPLR 3025 [b]; 3212 [a].) The court denies defendants’ current motions for summary judgment seeking to dismiss that claim, without prejudice. (CPLR 3212 [b], [e].)
The court denies defendants’ current motions for summary judgment seeking dismissal of the mother’s claims for lost support, services, or protection that are of pecuniary value or other pecuniary loss from the child’s wrongful death, with prejudice. The court grants defendants’ current motions, however, seeking dismissal of the mother’s claims for loss of the child’s services during the child’s life and for loss of the child’s society, comfort, and affection, whether during the child’s life or due to the child’s wrongful death. (Id.)